Mary Beth Kaufman, Esq. (SBN 228570)
Jill Stanton, Esq. (SBN 121084)
Law Offices of Jill Stanton
400 Montgomery Street, Suite 810
San Francisco, CA 94104
Phone: (415) 392-6161
Fax: (415) 392-8208
lawstan@pacbell.net

ORIGINAL
FILED

07 JUN 25 PH 2:52

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. ___ A. S. J.

E-FILING

Attorneys for Plaintiffs



### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE, CALIFORNIA

SHI'A ASSOCIATION OF THE BAY AREA;
DR. NABI RAZA MIR; SYEDA ZAHERA;
AHMED MIR; ALI MIR,

      Plaintiffs,

          vs.

MICHAEL CHERTOFF, Secretary,
Department of Homeland Security;

ALBERTO GONZALES, Attorney General,
United States;

EMILIO GONZALEZ, Director, United
States Citizenship & Immigration
Services;

CHRISTINA POULOS, Director,
California Service Center;

GERARD HEINAUER, Director, Nebraska
Service Center,

      Defendants.

No. C07 03328 JW PV

Complaint for Declaratory,
Injunctive, and Mandatory
Relief; [Proposed] Order

Immigration and
Administrative Procedure Act
Case

Date:
Time:
Courtroom: _____

1. This action is the outcome of the unfair treatment of a distinguished and established Shi'a Muslim religious organization in Northern California, and its Minister of five years, who have been subject to prolonged government delay in the adjudication of their requests for immigrant benefits, and the application of a government policy that treats religious workers, including Ministers, differently from other immigrants similarly situated. The government's actions and policy violate the Immigration and Nationality Act ("INA"), as well as Plaintiffs' constitutional rights to due process, equal protection under the law, and the free exercise of religion.

2. Plaintiff Dr. Nabi Raza Mir ("Dr. Mir") has served as the Minister[1] of the Shi'a Association of the Bay Area ("SABA") since January of 2002. SABA is an established Shi'a Muslim community institution and place of worship serving over 200 families in the Bay Area. Dr. Mir, his wife, and their two older children are nationals of India, who maintained valid non-immigrant religious worker status (R-1 and R-2 visas) until their status expired on January 1, 2007. On April 11, 2005, nearly two years before their non-immigrant status was to expire, SABA filed an I-360 petition for Dr. Mir as a "special

---

[1] Due to the lack of an equivalent English nomenclature for a Shi'a cleric, Dr. Mir is referred to with various titles,

religious worker." The approval of the petition would have allowed Dr. Mir to continue to serve as SABA's minister, and would have permitted Dr. Mir and his family to qualify for permanent residence in the United States.

3.     Following a lengthy delay in the government's adjudication of SABA's petition, and nearing the date of expiration of their Minister's visa, SABA sought mandatory relief in United States District Court, in the Northern District of California, on September 8, 2006. In its complaint with the District Court, SABA sought prompt adjudication of the I-360 by the Department of Homeland Security ("DHS"). In a joint stipulation, DHS agreed to adjudicate SABA's petition for Dr. Mir before December 29, 2006.

4.     Subsequently, DHS sent a 19-point Request for Evidence ("RFE") to SABA, in which it required SABA and Dr. Mir to submit additional documentation and explanations by December 18, 2006. SABA timely filed voluminous and detailed responses to the RFE. On December 29, 2006 DHS denied SABA's I-360 petition for their Minister of five years.

5.     SABA immediately filed an administrative appeal of the decision to the Administrative Appeals Office ("AAO"). Then, on May 29, 2007, SABA filed a new I-360 petition for Dr. Mir, based on a new 2-year qualifying period, and provided additional

including Minister, Resident Aalim, imam, priest, and Director of Religious Affairs.

COMPLAINT FOR DECLARATORY          - 3 -
INJUNCTIVE AND MANDATORY RELIEF

documentation addressing the concerns that DHS had raised in its
last RFE. Concurrently with the second I-360 petition, Dr. Mir,
his wife, and two older children filed I-485 applications for
adjustment of status and accompanying applications for interim
employment authorization.

6.    Attached to the concurrently filed applications was a
recent decision by the United States District Court for the
Western District of Washington, in which the court had recently
ruled in favor of similarly situated plaintiffs, and required
that such concurrent filings of I-360 petitions and I-485
applications be accepted by the Department of Homeland Security.
*Hillcrest Baptist Church v. USA*, C06-1042 TSZ (D.C. W. Dist.,
WA, 2007.  Att. 1 (*Hillcrest Baptist Church v. USA*).  However,
DHS unlawfully rejected the adjustment of status and work
authorization applications on June 6, 2007.  Counsel received
the rejected applications on June 20, 2007.

7.    On June 14, 2007, DHS's denial of the first I-360
petition was vacated by the AAO and remanded to the District
Director of the California Service Center, primarily because the
petition had been denied on grounds that were never raised in
DHS's 19-point RFE.

8.    As a result of the government's previous delay of
almost 2 years, and its refusal to accept the applications for
adjustment of status and employment authorization, Dr. Mir and

1  his family are at imminent risk of accruing over 180 days of
2  "unlawful presence," which would bar them from adjustment of
3  status and make them ineligible for re-entry to the United
4  States for 3 to 10 years.

5
6      9.   Plaintiffs now seek relief under the First and Fifth
7  Amendments to the Constitution of the United States of America,
8  protecting Plaintiffs' rights of due process, equal protection
9  under the law, and the free exercise of religion.

10     10.   Plaintiffs seek judicial review of the rejection of
11  their applications for adjustment of status under the
12  Administrative Procedure Act, and an order that those
13  applications be accepted by USCIS for processing as of the date
14  of filing, that interim employment authorization be issued
15  during the pendency of the application, that an emergency
16  injunctive order be issued enjoining the Defendants from
17  calculating unlawful presence for Dr. Mir and his family, and
18  that Plaintiffs be deemed in lawful status until such time that
19  the Court rules on the Plaintiffs' claims for relief.

20     11.   Without such an order, the Plaintiffs will suffer
21  irreparable injury.  SABA, a prestigious and established
22  community organization, is at imminent risk of loss of their
23  religious leader, a learned and progressive Minister who has
24  developed a long-standing relationship of trust with his
25  congregants.

## PARTIES

12.   Plaintiff Shi'a Association of the Bay Area ("SABA") is a non-profit religious organization under § 501(c)(3) of the Internal Revenue Code, located in San Jose, California.

13.   Plaintiff Dr. Nabi Raza Mir ("Dr. Mir") is the Minister, also called "resident aalim" or "imam," of the Shi'a Association of the Bay Area.  He lives in San Jose, California, with his wife and four children.  His two younger children are United States citizens.

14.   Plaintiff Syeda Zahera (Ms. Zahera") is the wife of Dr. Mir.

15.   Plaintiff Ahmed Mir is a minor son of Dr. Mir and Ms. Zahera.

16.   Plaintiff Ali Mir is a minor son of Dr. Mir and Ms. Zahera.

17.   Defendant Michael Chertoff, the Secretary of DHS, is responsible for the adjudication of petitions for religious workers filed by Plaintiff SABA, and the applications for adjustment of status filed by Plaintiffs Dr. Mir, Ms. Zahera, and their two older children.  As the Secretary of DHS, Secretary Chertoff is responsible for adjudicating petitions for special immigrants and applications for adjustment of status. He is sued in his official capacity as the Secretary of DHS.

1   18.   Defendant Alberto R. Gonzales is the Attorney General
2   of the United States.   The Attorney General represents the
3   United States in legal matters.   Attorney General Gonzales is
4   sued in his official capacity.

5       19.   Defendant Emilio T. Gonzalez, is the Director of U.S.
6   Citizenship and Immigration Services ("USCIS"), the
7   administrative agency within DHS that is responsible for the
8   adjudication of the petitions for religious worker filed by
9   Plaintiff SABA, and the applications for adjustment of status
10  filed by Plaintiffs Dr. Mir, Ms. Zahera, and their two older
11  children. As Director of USCIS, Director Gonzalez is responsible
12  for adjudicating petitions for special immigrants and
13  applications for adjustment of status.   He is sued in his
14  official capacity as the Director of USCIS.

15      20.   Defendant Gerard Heinauer is the Director of the
16  Nebraska Service Center, the regional office of USCIS that
17  adjudicates concurrently filed adjustment of status applications
18  filed by individuals living in California.   As the Director of
19  the Nebraska Service Center, Mr. Heinauer is responsible for the
20  adjudication of the applications for adjustment of status filed
21  by Plaintiffs Dr. Mir, Ms. Zahera, and their two older children.
22  He is sued in his official capacity as the Director of the
23  Nebraska Service Center.

21.   Defendant Christina Poulos is the Director of the California Service Center of USCIS.  As Director of the California Service Center, she is responsible for the adjudication of the first religious worker petition filed by SABA on behalf of Dr. Mir, which was denied after a district court action resulted in a stipulated agreement for prompt adjudication, and was remanded back to the California Service Center by the Administrative Appeals Office on June 14, 2007.  She is sued in her official capacity as the Director of the California Service Center.

## JURISDICTION

22.   This Court has subject matter jurisdiction over this action under 28 U.S.C. §1331 (federal question jurisdiction) because Plaintiffs' claims arise under the Constitution and laws of the United States, specifically §§ 203(b)(4), and 245(a) of the Immigration and Nationality Act ("INA") [8 U.S.C. §§ 1153(b)(4), 1255(a)] and applicable regulations arising thereunder, 8 C.F.R. § 274a.12(c)(9), and the due process, equal protection, and free exercise of religion clauses under the U.S. Constitution. This Court may grant relief in this action under 5 U.S.C. §701 et seq. (Administrative Procedure Act); 28 U.S.C. §1361 (Mandamus Act); 28 U.S.C. §1651 (All Writs Act); and under 28 U.S.C. §2201 (Declaratory Judgment Act).

23.   Venue properly lies in the Northern District of California pursuant to 28 U.S.C. § 1391(e) and 28 U.S.C. § 1402(b) because the United States government is a defendant, the cause of action arises in this judicial district, and the plaintiffs reside in this judicial district.

## ATTORNEY'S FEES

24.   Plaintiffs hereby inform the Court that if they prevail on this action, they will seek attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).

## LEGAL BACKGROUND

### Immigrant and Non-Immigrant Visas for Religious Workers

25.   The INA provides for two categories of visas for foreign religious workers — one temporary and one permanent. Individuals who qualify for a temporary, non-immigrant R-visa, are allowed to remain in the United States to perform religious work for a maximum of five years. INA § 101(a)(15)(R), 8 U.S.C. § 1101(a)(15)(R). Their spouses and children are eligible for derivative R-2 visas. *Id*. The permanent, or immigrant, visa is available to an alien who is referred to as a "special immigrant."

26.   Under INA § 101(a)(27)(C)(2), a "special immigrant" is an immigrant who:

> (i) for at least two years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide

COMPLAINT FOR DECLARATORY        -9-
INJUNCTIVE AND MANDATORY RELIEF

nonprofit, religious organization in the United
States;

(ii) seeks to enter the United States —

    (I)      solely for the purpose of carrying on the
vocation of the minister of that religious
denomination,

    (II)    before October 1, 2008, in order to work
for the organization at the request of the
organization in a professional capacity in a religious
vocation or occupation, or

    (III)   before October 1, 2008, in order to work
for the organization (or for a bona fide organization
which is affiliated with the religious denomination
and is exempt from taxation as an organization
described in section 501(c)3 of the Internal Revenue
Code of 1986) at the request of the organization in a
religious vocation or occupation; and

(iii) has been carrying on such a vocation,
professional work, or other work continuously for a
least the two year period described in clause (i).

INA § 101(a)(27)(C), 8 U.S.C. § 1101(a)(27)(C).

27. Because the R-1 visa requirements specifically
reference the INA definition of "special immigrant," the
only distinctions between the non-immigrant and immigrant
visas are that: 1) the non-immigrant applicant may only
work for five years, whereas the special immigrant may
remain and work in the United States permanently, and 2) an
immigrant applicant has to have been carrying on related
religious vocation or professional work for the previous
two-year period, which is not required for a temporary non-
immigrant religious worker. INA § 101(a)(15)(R), 8 U.S.C. §

1 1101(a)(15)(R); INA § 101(a)(27)(C), 8 U.S.C. §

2 1101(a)(27)(C).

3 **Adjustment of Status**

4 28.   Under INA § 245(a), 8 U.S.C. § 1255(a), a non-

5 citizen who is in the United States pursuant to a legal

6 entry, has a visa available, and is "admissible," may

7 adjust his or her status to that of a permanent resident in

8 the United States, rather than having to consular process

9 through a U.S. Embassy abroad.[2]  To apply for "adjustment of

10 status," the applicant files form I-485 with USCIS.  Under

11 INA § 245(k), 8 U.S.C. § 1255(k), a religious worker may

12 adjust status in the United States so long as:

13 
14          (1)  the alien, on the date of filing an application
              for adjustment of status, is present in the
15           United States pursuant to a lawful admission;
         (2)  the alien, subsequent to such lawful admission
16           has not, for an aggregate period exceeding 180
              days—
17          (A)  failed to maintain, continuously, a
                   lawful status;
18          (B)  engaged in unauthorized employment; or
19          (C)  otherwise violated the terms and
                   conditions of the alien's admission.
20 
21 29.   Thus, while a religious worker may apply for

22 adjustment of status within 180 days of the expiration of an

23 authorized stay, being present in the United States beyond the

24 180-day period renders the applicant ineligible to adjust

25 

26 _____

27 [2] The Department of State Visa Bulletin indicates whether visas
are available to various categories of immigrants.  Both

28 

COMPLAINT FOR DECLARATORY        -11-
INJUNCTIVE AND MANDATORY RELIEF

1  status. The accrual of "unlawful presence" also bars the
2  applicant from seeking to immigrate for a period of either 3 or
3  10 under INA § 212(a)(9)(B), 8 U.S.C. § 1182(a)(9)(B), depending
4  on the calculated duration of unlawful presence.[3]
5
6  **General Employment-Based Visas v. Religious Worker Visas**
7      30.  An employer who files an application for an immigrant
8  visa on behalf of a non-religious worker under INA § 203(b)(1),
9  (2), or (3), 8 U.S.C. § 1153(b)(1), (2), or (3) files Form I-140
10 with USCIS.  An employer filing on behalf of a religious worker
11
12 under INA § 203(b)(4), 8 U.S.C. § 1153(b)(4), files a Form I-
13 360, Petition for Special Immigrant.  Thus, a non-religious
14 worker needs USCIS to approve an I-140 Form and an I-485 Form in
15 order to adjust to permanent resident status, and a religious
16

---

17 religious and non-religious workers have visas immediately
   available.  Att. 22 (*Visa Bulletin*).
18 [3] INA 212(a)(9)(B), 8 U.S.C. § 1182(a)(9)(B) provides:
   (i)  In general.-Any alien (other than an alien
19        lawfully admitted for permanent residence) who-
20       (I)  was unlawfully present in the United
             States for a period of more than 180 days
21            but less than 1 year, voluntarily departed the
             United States (whether or not pursuant to section
22            244(e) prior to the commencement of proceedings
             under section 235(b)(1) or section 240 and again
23            seeks admission within 3 years of the date of
             such alien's departure or removal, or
24

25       (II) has been unlawfully present in the United States
             for one year or more, and who again seeks
26            admission within 10 years of the date of such
             alien's departure or removal from the United
27            States, is inadmissible.
28

COMPLAINT FOR DECLARATORY        - 12 -
INJUNCTIVE AND MANDATORY RELIEF

worker needs USCIS to approve an I-360 Form and an I-485 Form in order to adjust to permanent resident status.

31. Under the regulations, when employers of non-religious workers file an I-140 petition, the beneficiary is permitted to concurrently file an I-485 application for adjustment of status. 8 C.F.R. § 245.2(a)(2)(B). By operation of regulation, while the I-485 is pending with USCIS, the alien is entitled to work authorization. 8 C.F.R. § 274a.12(c)(9).

32. The added benefit of filing the concurrent application is that as of the date of filing the I-485, an applicant no longer accrues unlawful presence. This is because properly filed affirmative 245(a) applications toll unauthorized time and are considered to be a period of stay authorized by the Attorney General. Memo, Pearson, Exec. Assoc. Comm. Field Operations (HQADN 70/ 21.1.24-P, AD 00-07)(March 3, 2000). Att. 24 (*March 3, 2000 AG Memo*).

33. Unlike the regulations pertaining to I-140s that allow an alien to file a concurrent I-485, however, the regulations do not permit a "special immigrant" to file a concurrent I-485 application. 8 § C.F.R. 245.2(i)(B). As a result of this agency policy, an alien who has a pending special immigrant petition does not qualify for work authorization while that petition is pending (by virtue of the fact that there is no I-485 pending). This means that a beneficiary applying for a

special immigrant visa who is already in the United States will accumulate unlawful presence and may not continue to work while the petition is pending. As a result, the applicant becomes ineligible for adjustment of status, and moreover, is barred from reentry to the United States for three to ten years.

## STATEMENT OF FACTS

34.   Dr. Mir is a native and citizen of India, born and raised in the Shi'a Muslim faith. Att. 4 (*SABA's Second I-360 Petition for Dr. Mir, Excerpt*) at 15; Att. 5 (*Dr. Mir's I-485 Application for Adjustment of Status, Excerpt*) at 5-6. Dr. Mir is married and has four children, two of whom are United States citizens.   He has a doctorate in Islamic Theology from the Imam-e-Sadiq Institute in Qom, Iran. Att. 4 (*SABA's Second I-360 Petition for Dr. Mir, Excerpt*) at 43-48.   Prior to earning his doctorate, he earned degrees from the Islamic Sciences Seminary in the Qom Seminary Complex, one of the most renowned spiritual and religious centers of Shi'a Islam. *Id.*

35.   Shi'a Islam is a non-hierarchical denomination. Att. 4 (*SABA's Second I-360 Petition for Dr. Mir, Excerpt*) at 12-13. As a result, the requirements for Shi'a Muslim clerics are distinct from those of religious leaders in many other denominations where there is a hierarchical structure. *Id.*   Dr. Mir studied in programs specifically for Shi'a clerics and theologians, and his diplomas are equivalent to Christian

ordination, empowering Dr. Mir to serve as Minister. Att. 4
(*SABA's Second I-360 Petition for Dr. Mir, Excerpt*) at 12-13,
49-54.

36. The Shi'a Association of the Bay Area is the largest
Shi'a Muslim mosque and religious center in Santa Clara County,
California, and has established itself as a prestigious and
recognized organization in the Bay Area since 1979. Att. 4
(*SABA's Second I-360 Petition for Dr. Mir, Excerpt*) at 12-18.
SABA has had non-profit status since 2001. Att. 4 (*SABA's Second
I-360 Petition for Dr. Mir, Excerpt*) at 29-31.

37. In 2001, SABA petitioned for a non-immigrant religious
worker visa on behalf of Dr. Mir. On January 3, 2002, USCIS
granted Dr. Mir the R-1 visa to fulfill the position of Minister
with SABA. Att. 9 (*R-1 Visa*). Dr. Mir's wife, Ms. Zahera, and
two older sons, Ahmed and Ali Mir, received R-2 visas as
derivative beneficiaries. The religious worker visas were valid
for three years, through January 1, 2005.

38. In order to receive his R-1 status, Dr. Mir was
required to prove that he was a member of the Shi'a religious
denomination for at least two years, and that he sought to enter
the United States solely for the purpose of carrying on the
vocation of Minister of a religious denomination, at the request
of a qualifying organization. INA § 101(a)(15)(R), 8 U.S.C. §
1101(a)(15)(R). As the Minister for SABA, Dr. Mir provided all

of the services and guidance of a leader of a religious
institution, including officiating at marriages, conducting
daily, weekly, and special holiday religious services, teaching
classes and seminars, and conducting last rites, funeral
prayers, and rites of burial, among other services. Att. 4
(*SABA's Second I-360 Petition for Dr. Mir, Excerpt*) at 12-18.

39.  On October 22, 2004, SABA petitioned for the renewal
of Dr. Mir and his family's R-1 and R-2 visas.[4]  Att. 10 (*SABA's
Petition to Renew Dr. Mir's Status, Excerpt*). USCIS requested
voluminous evidence to support the petition. SABA provided the
requested documentation on November 30, 2004, and USCIS approved
the petition on December 15, 2004. Att. 11 (*November 2004
Response to Request for Evidence, Excerpt*); Att. 12 (*R-1
Extension Approval*).  Dr. Mir and his family's visas were thus
extended through January 1, 2007. *Id*.  On April 11, 2005,
approximately one year and nine months before the expiration of
the R visas, SABA filed an I-360 petition for Dr. Mir to
immigrate as a religious worker with his family.[5]  Att. 13 (*I-360
Receipt Notice*).

---

[4] On July 25, 2002, Dr. Mir was found to be carrying undeclared
diamonds into the United States. Dr. Mir explained that he was
bringing them for appraisal only and did not understand they
needed to be declared.  The items were seized, and the case was
later settled on September 25, 2002.  Dr. Mir paid a fine, and
the property was returned.
[5] The average processing times for I-360 petitions was four
months.  Att. 14 (*USCIS Processing Times*).

40.  As of July 2005, the California Service Center of USCIS was processing I-360 petitions submitted before April 25, 2005, and as of November 2005, USCIS was processing applications filed before June 15, 2005.  Att. 14 (*USCIS Processing Times*). Seeing that SABA's petition for Dr. Mir, which had been filed on April 11, 2005 had still not been adjudicated, SABA and Dr. Mir's attorney, Zahir Zaidi, made repeated inquiries — at least ten -- into the status of the application between July 2005 and December 2006.  Att. 15 (*Cases Status Inquiries and Responses*). The inquiries also requested adjudication, and, finally, urged USCIS to consider SABA's risk of losing their Minister of many years.  *Id*.  A December 16, 2005 inquiry also emphasized that Dr. Mir's mother was gravely ill, and that Dr. Mir would not be able to securely travel without being able to file an I-485 application for adjustment of status, and permission to travel on the basis thereof. *Id*. Att. 15 (*Cases Status Inquiries and Responses*) at 5-10.

41.  Although I-360 petitions filed at the same time as SABA's had long been processed, SABA and Dr. Mir's counsel were repeatedly informed, over the course of an entire year, that the case was still "pending" or had been "delayed."  Att. 15 (*Cases Status Inquiries and Responses*) at 4, 13-20.  Congressman Pete Stark also made an inquiry on behalf of SABA and Dr. Mir, with the same results.  In September 2006, about a year and a half

after the petition had been submitted, Dr. Mir's non-immigrant
visa was close to expiring. *Id*.

42. At risk of losing their longtime Minister who had been
twice-approved for non-immigrant religious worker visas, SABA
filed a complaint for mandatory relief in the Northern District
Court of California on September 8, 2006 asking the court to
compel the government to adjudicate the I-360 within 30 days
(Case No. C06 05515). Att. 2 (*Complaint for Mandatory Relief*).
After a request for preliminary injunctive relief, the parties
filed a joint stipulation on December 7, 2006, in which DHS
agreed to adjudicate SABA's petition for Dr. Mir before December
29, 2006. Att. 3 (*Joint Stipulation*). On December 11, 2006,
USCIS sent a 19-point Request for Evidence to SABA, requesting a
response by December 18, 2006. Att. 16 (*Request for Evidence*).

43. On December 16, 2006, SABA replied to each of the 19
points, attaching voluminous supporting evidence. Att. 17
(*Response to Request for Evidence, Excerpt*). DHS agents also
conducted a site visit and personal interview with Dr. Mir
during this time. On December 29, 2006 the California Service
Center denied SABA's petition for their minister of five years
on the following grounds:

> a. "The record does not contain a comprehensive
> description of the petitioner's actual job offer"

| | |
|---|---|
| 1 | b. "The petitioner claims the beneficiary will be |
| 2 | employed as its head priest or religious minister |
| 3 | but the record does not reflect the beneficiary is |
| 4 | qualified for that position. No ordination |
| 5 | certificate or its counterpart in the Shi'a Islamic |
| 6 | faith is in the record," and Dr. Mir refers to |
| 7 | |
| 8 | himself as a "Director of Religious Affairs," rather |
| 9 | than as a "minister or member of the clergy," in his |
| 10 | resume. |
| 11 | c. "The record does not establish that the beneficiary |
| 12 | entered the United States solely to perform the |
| 13 | duties of a minister," since he has worked in other |
| 14 | capacities and his transportation of diamonds into |
| 15 | |
| 16 | the United States demonstrates "substantial |
| 17 | involvement in secular employment." |

Att. 18 (*I-360 Denial Notice*).

44. SABA timely appealed the decision to USCIS's Administrative Appeals Office ("AAO"), and on June 14, 2007, the AAO withdrew USCIS's decision denying SABA's first I-360 petition, and remanded the matter back to the California Service Center, upon a finding that the denial was "deficient" and was based on grounds that Plaintiffs were never given an opportunity to address. Att. 19 (*Notice of Appeal*); Att. 20 (*AAO Remand Order*) at 9.

45.   Specifically, the AAO articulated three separate

grounds upon which the USCIS denied the petition without giving

Plaintiffs an opportunity to address its concerns.   First, the

AAO noted that although the California Service Center had denied

the I-360 on grounds that "no ordination certificate or its

counterpart in the Shi'a Islamic faith is in the record" and

that it was unclear whether Dr. Mir was authorized to work as a

minister, the Service Center did not "request a certificate of

ordination, nor did the 19-point RFE otherwise touch on the

issue of [Dr. Mir's] ordination or comparable authorization to

perform the duties of clergy in his denomination."   Att. 20 (*AAO*

*Remand Order*) at 3. The AAO concluded that letters submitted by

Plaintiffs indicating that Dr. Mir is an "aalim," should not be

"easily dismissed," and if the USCIS "is still concerned about

[Dr. Mir's] qualifications, or the sufficiency of the evidence

offered regarding those qualifications," it should specifically

request that evidence in a new RFE.   *Id.*   Because the prior RFE

"did not touch on the issue of [Dr. Mir's] qualifications at

all," the AAO withdrew the USCIS's "finding regarding the

beneficiary's qualifications as an aalim."   Id.

46.   Second, the AAO pointed out that although the USCIS

denied the I-360 based partly on the lack of a "'comprehensive

description of [SABA's] actual job offer'. . . the 19-item RFE .

. . contained no inquiry about the nature of the job offer."

Att. 20 (*AAO Remand Order*) at 4-5. The AAO concluded, "We agree that the petitioner has adequately described the claimed arrangements for the beneficiary's compensation." Att. 20 (*AAO Remand Order*) at 5-6.

47.   The AAO also found that USCIS had erred in relying "too heavily on the issue of the diamonds that [Dr. Mir] was carrying in 2002," since the "two-year qualifying period did not commence until April 2003, and therefore the beneficiary's activities the previous summer are of at best secondary consequence." Att. 20 (*AAO Remand Order*) at 8. The AAO further found that while there were discrepancies between the stated salary Dr. Mir received from SABA and the income reflected in his income tax returns, the main issue it raises is whether Dr. Mir meets the requirement that his work for SABA is his sole source of income — an issue he was not asked to address in USCIS's RFE. Att. 20 (*AAO Remand Order*) at 8-9.

48.   Finally, the AAO found that USCIS's denial of the petition based upon Dr. Mir's use of the term "Director of Religious Affairs," rather than as a "minister," was erroneous, since "the beneficiary's choice of terminology is not, by itself a disqualifying factor or strong grounds for denial of the petition." Att. 20 (*AAO Remand Order*) at 4. The AAO ordered that after the Service Center gives Plaintiffs an opportunity to address the issues that formed the basis of its denial of the I-

360 petition, it should certify its decision back to the AAO, "regardless of the outcome."

49.    Prior to the AAO remand, and approaching the 180-day deadline to submit an adjustment of status application pursuant to INA § 245(k), SABA filed a new I-360 petition on May 29, 2007, concurrently with applications for permanent residence for Dr. Mir and his family members.    Att. 4 (*SABA's Second I-360 Petition for Dr. Mir, Excerpts*), Att. 5 (*Dr. Mir's I-485 Application for Adjustment of Status, Excerpts*); Att. 6 (*Ms. Zahera's I-485 Application for Adjustment of Status, Excerpts*); Att. 7 (*Ahmed Mir's I-485 Application for Adjustment of Status, Excerpts*); Att. 8 (*Ali Mir's I-485 Application for Adjustment of Status, Excerpts*).    The applications were delivered by Federal Express on May 30, 2007, and stamped as received on June 1, 2007.    Att. 21 (*Proof of Delivery*); Att. 23 (*Rejected Date-Stamped Applications, Excerpts*).    Visas were currently available for Dr. Mir and his family members, making them eligible to file the I-485 applications.    Att. 22 (*June 2007 Visa Bulletin*).

50.    However, USCIS unlawfully rejected the adjustment of status and employment authorization applications through notices dated June 6, 2007, stating that "[t]he Service cannot accept your I-485 Application to Register Permanent Residence or Adjust Status as submitted.    You have an I-360 Petition for Amerasian, Widow(er) or Special Immigrant pending with U.S. Citizenship and

Immigration Service (CIS). You may resubmit the I-485 application only when/if your receive a notice from CIS that you[sic] I-360 petition for special immigrant has been approved."[6] Att. 23 (*Rejected Date-stamped Applications, Excerpts*).

## IRREPARABLE INJURY

51. If USCIS is not compelled to accept Dr. Mir and his wife's adjustment applications as of the date of receipt, June 1, 2007, or at least prior to the expiration of the permissible 180 days under INA § 245(k), Dr. Mir and his wife will fall out of lawful status and be ineligible to adjust their status to that of lawful permanent residence in the United States. Dr. Mir and his family would then have to return to India in order to obtain an immigrant visa that would allow him to work as the minister of the Shi'a Association of the Bay Area. However, upon their departure from the United States Dr. Mir and his family would incur a penalty under INA § 212(a)(9)(B), 8 U.S.C. § 1182(a)(9)(B), and they would not be allowed to return to the United States for three to ten years.

52. Plaintiffs will suffer the irreparable injury of the violation of their constitutional rights to equal protection under the law, due process, and the free exercise of religion.

---

[6] Although the rejection notices are dated June 6, 2007, the rejected applications were mailed on June 12, 2007 to Dr. Mir's previous counsel in San Jose, and forwarded to undersigned counsel on June 20, 2007.

The regulations' disparate treatment of religious and non-religious workers has an unequal and unjust effect on religious workers such as Dr. Mir. The regulations make a distinction between religious workers and non-religious workers, which the statute does not make. The regulation's disparate treatment of religious workers is *ultra vires* and "bears [no] fair relationship to a legitimate public purpose." *Plyler v. Doe*, 457 U.S. 202, 216 (1982). The United States District Court for the Western District of Washington found on February 23, 2007, that the USCIS's policy of accepting concurrent filings for employment-based immigrants but refusing concurrent filings for religious workers under 8 C.F.R. §235.2a)(2)(i)(B), "violates the Equal Protection component of the Due Process Clause of the Fifth Amendment of the United States Constitution." *Hillcrest Baptist Church v. USA*, C06-1042 TSZ (U.S. District Ct. W. District, WA, 2007. The Court found that USCIS's refusal to accept the applications violated the Plaintiffs' constitutional rights. *Id*.

53. If the I-485 (adjustment of status) and I-765 (employment authorization) applications are not accepted for Dr. Mir and his family members, Dr. Mir will not be permitted to work after June 29, 2007. His inability to work and SABA's loss of Ministerial leadership constitutes irreparable harm. Furthermore, without the ultimate adjudication of Dr. Mir and

his family members' applications for adjustment of status, the applicants are unable to travel freely, and will not accrue the time required to apply for citizenship under INA § 316, 8 U.S.C. 1427.

54.   Plaintiff SABA will suffer irreparable injury if the I-485 applications are not accepted as of the date of filing, as their minister of 5 years, for whom over a hundred congregants submitted letters of support to USCIS, would be unable to facilitate the practice of the Shi'a Muslim religion for SABA's members.   SABA's and its congregants' First Amendment Right to the free exercise of religion will be undoubtedly violated, since the accumulation of Dr. Mir's unlawful presence will prevent SABA from having Dr. Mir serve as their minister, for at least three years. Because of Dr. Mir's close relationship with the congregation and the fact that equally qualified applicants would likely need to be immigrated from abroad, it would be very difficult to replace Dr. Mir due to his.   Att. 25 (*Sworn Declaration of Vahid Hosseini, President of the Board of Directors of SABA*).

55.   The violation of a First Amendment right always constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005)

("'Under the law of this circuit, a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim.'"), quoting *Sammartano v. First Judicial Court*, 303 F.3d, 959, 973-74 (9th Cir. 2002).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

56. Where the Administrative Procedure Act ("APA") applies, appeal to a "superior agency authority" is a prerequisite to judicial review only when expressly required by statute, or when agency rules require appeal before review and administrative action is made inoperative pending that review; courts are not free to impose an exhaustion requirement as a rule of judicial administration where agency action has already become "final" under the APA. 5 U.S.C.A. § 704 Section 10(c), 80 Stat. 392-393. *See Darby v. Cisneros* 509 U.S. 137, 113 S.Ct. 2539. In the instant case, although the denial of the I-360 was appealed to the AAO and remanded, administrative review at this juncture has become moot, because Plaintiffs Dr. Mir, Ms. Zahera, Ahmed Mir, and Ali Mir are at imminent risk of ineligibility to adjust status under INA § 245(k), 8 U.S.C. § 1255(k). Furthermore, there is no mechanism for administrative review available for the rejection of the adjustment of status applications for Dr. Mir and his family members.

# CAUSES OF ACTION

## I. Violation of INA §§ 203(b)(4), 245(a) (Number of Visas Available, Adjustment of Status)

Plaintiffs incorporate paragraphs 1 through 56 as if fully set forth herein.

Defendants' practices, policies, conduct, and failures to act as alleged herein deprive Plaintiffs of their rights provided under INA §§ 203(b)(4) and 245(a). As a result, Plaintiffs have suffered and will continue to suffer irreparable harm entitling them to injunctive and other relief.

## II. Violation of 5 U.S.C. § 702, et seq. (Administrative Procedure Act)

Plaintiffs incorporate paragraphs 1 through 56 as if set forth in full herein.

Defendants' practices, policies, conduct, and failures to act as alleged herein violate, inter alia, the Administrative Procedure Act, 5 U.S.C. §§ 702 and 706, because agency action is unlawfully withheld or unreasonable delayed under § 706(1) and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and contrary to constitutional rights under § 706(2). As a result, Plaintiffs have suffered irreparable harm entitling them to injunctive and other relief.

## III. Violation of the Fifth Amendment, Due Process and Equal Protection (U.S. Constitution)

Plaintiffs incorporate paragraphs 1 through 56 as if set forth in full herein.

COMPLAINT FOR DECLARATORY          -27-
INJUNCTIVE AND MANDATORY RELIEF

1    Defendants' practices, policies, conduct, and failures to
2    act as alleged herein violate Plaintiffs' rights to due process
3    and equal protection of law protected by the Fifth Amendment to
4    the United States Constitution. As a result, Plaintiffs have
5    suffered irreparable harm entitling them to injunctive and other
6    relief.

**IV.  Violation of First Amendment, Free Exercise of Religion
     (U.S. Constitution)**

     Plaintiffs incorporate paragraphs 1 through 56 as if set
forth in full herein.

     Defendants' practices, policies, conduct, and failures to
act as alleged herein violate Plaintiffs' rights to the free
exercise of religion as protected by the First Amendment to the
United States Constitution. As a result, Plaintiffs have
suffered irreparable harm entitling them to injunctive and other
relief.

**RELIEF REQUESTED**

Wherefore, Plaintiffs respectfully ask that the Court:

     a) Declare that Defendants' acts and omissions complained
        of herein violate the INA, the Administrative Procedure
        Act, the Due Process and Equal Protection Clauses of the
        Fifth Amendment and the Free Exercise of Religion Clause of
        the First Amendment;

     b)  Preliminarily enjoin Defendants from:

          (1)  calculating any unlawful presence accrued by

COMPLAINT FOR DECLARATORY          - 28 -
INJUNCTIVE AND MANDATORY RELIEF

Plaintiffs Dr. Mir, Ms. Zahera, Ahmed Mir, or
Ali Mir;

(2) determining that Plaintiffs Dr. Mir, Ms. Zahera,
Ahmed Mir, or Ali Mir worked without
authorization, or that they failed to maintain
lawful status prior to the filing of their
applications; or

(3) finding that Plaintiffs Dr. Mir, Ms. Zahera,
Ahmed Mir, or Ali Mir otherwise violated the
terms and conditions of their non-immigrant visas
prior to the filing of their I-485 adjustment of
status applications;

c) Order Defendants to accept Plaintiffs' I-485
applications for adjustment of status and I-765 application
for employment authorization as of June 1, 2007;

d) Order Defendants to immediately adjudicate Plaintiffs'
request for employment authorization;

e) Award Plaintiffs their attorneys' fees and costs under
the Equal Access to Justice Act; and

f) Grant such other relief as the Court deems just,
equitable, and proper.

///

///

Dated: July 25, 2007                    Respectfully Submitted,


_____
Mary Beth Kaufman, Esq.
Jill Stanton, Esq.
Law Offices of Jill Stanton
400 Montgomery Street, Suite 810
San Francisco, CA 94104
Phone: (415) 392-6161
Fax: (415) 392-8208

COMPLAINT FOR DECLARATORY          - 30 -
INJUNCTIVE AND MANDATORY RELIEF

Mary Beth Kaufman, Esq. (SBN 228570)
Jill Stanton, Esq. (SBN 121084)
Law Offices of Jill Stanton
400 Montgomery Street, Suite 810
San Francisco, CA 94104
Phone: (415) 392-6161
Fax: (415) 392-8208

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE, CALIFORNIA

| | |
|---|---|
| SHI'A ASSOCIATION OF THE BAY AREA; DR. NABI RAZA MIR; SYEDA ZAHERA; AHMED MIR; ALI MIR,<br><br>        Plaintiffs,<br><br>                vs.<br><br>MICHAEL CHERTOFF, Secretary, Department of Homeland Security;<br><br>ALBERTO GONZALES, Attorney General, United States;<br><br>EMILIO GONZALEZ, Director, United States Citizenship & Immigration Services;<br><br>CHRISTINA POULOS, Director, California Service Center;<br><br>GERARD HEINAUER, Director, Nebraska Service Center,<br><br>        Defendants. | No. _____<br><br>[Proposed] Order Granting Injunctive Relief<br><br>Date:<br>Time:<br>Courtroom: _____ |

[PROPOSED] ORDER                 - 1 -

After considering the moving papers filed in this action, the Court declares that:

Defendants' acts and omissions complained of in Plaintiffs' Complaint violate the Immigration and Nationality Act, the Administrative Procedure Act, the Due Process and Equal Protection Clauses of the Fifth Amendment of the U.S. Constitution, and the Free Exercise of Religion Clause of the First Amendment of the U.S. Constitution.

**IT IS ORDERED that:**

1.  Defendants accept the adjustment of status applications and applications for employment authorization of Plaintiffs Dr. Nabi Raza Mir, Ms. Syeda Zahera, Ahmed Mir, and Ali Mir as of the original date of receipt, June 1, 2007;

2.  Defendants refrain from determining that the above-mentioned Plaintiffs accrued unlawful presence, worked without authorization, or that they failed to maintain lawful status, for more than 180 days prior to filing their applications for adjustment of status;

3.  Defendants refrain from otherwise determining that the above-mentioned Plaintiffs violated the terms and conditions of their non-immigrant visas prior to the filing of their adjustment of status applications;

4.  Defendants refrain from calculating any unlawful presence accrued by the above-mentioned Plaintiffs until there is a final decision on their I-360 petitions;

5.  Defendants expeditiously adjudicate the above-named Plaintiffs' requests for employment authorization.

**SO ORDERED.**

DATE:_____      _____
                                  UNITED STATES DISTRICT JUDGE

**HILLCREST BAPTIST CHURCH, EDWARD WILLIAM LEHMAN; ALANA LOUISE LEHMAN, Plaintiffs, v. UNITED STATES OF AMERICA, U.S. CITIZENSHIP AND IMMIGRATION SERVICES; and GREGORY W. CHRISTIAN, Acting Director, U.S. CIS Nebraska Service Center, Defendants.**

**No. C06-1042Z**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON**

**2007 U.S. Dist. LEXIS 12782**

**February 23, 2007, Decided
February 23, 2007, Filed**

**COUNSEL:** [*1] For Hillcrest Baptist Church, Edward Lehman, Alana Lehman, Plaintiffs: Robert Pauw, LEAD ATTORNEY, GIBBS HOUSTON PAUW, SEATTLE, WA.

For United States of America, United States Citizenship and Immigration Services, Gregory W Christian, Acting Director of Nebraska Service Center, Defendants: Christopher Lee Pickrell, US ATTORNEY'S OFFICE, SEATTLE, WA.

**JUDGES:** Thomas S. Zilly, United States District Judge.

**OPINION BY:** Thomas S. Zilly

**OPINION:**

ORDER

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment, docket no. 8, and Defendants' Cross-Motion to Dismiss, or in the Alternative, to Stay District Court Proceedings, docket no. 11. Having considered the briefs and evidence in support of and in opposition to the motions, the Court enters the following Order.

**I. BACKGROUND**

**A. Parties and Present Action**

Edward Lehman, and his wife, Alana Lehman, are Canadian citizens, with three U.S. citizen children. Ex. U n1 at 67 (E. Lehman Decl.) P 4; Ex. U at 72 (A. Lehman Decl.) P 5. Mr. and Mrs. Lehman, and Hillcrest Baptist Church, a church in Sultan, Washington where Mr. Lehman is a pastor (collectively "Plaintiffs"), bring this action against the United States [*2] of America, the United States Citizenship and Immigration Services ("CIS"), and Gregory W. Christian, Acting Director of the CIS Nebraska Service Center (collectively the "Government" or "Defendants"), seeking to reverse CIS's decision to deny the Lehmans' applications for permanent resident and adjustment of status, to order that the applications be approved, and to order that Mr. Lehman's employment authorization be approved retroactive to May 14, 2003.

> n1 Unless otherwise noted, the Exhibits referred to in this Order are Plaintiffs' Exhibits, docket no. 8.

**B. The Lehmans' Immigration History**

In June 1998, Mr. Lehman received an R-1 religious worker visa, and Mrs. Lehman received an R-2 visa, as a derivative beneficiary. These religious worker visas ("R-visas") were valid for three years, through June 3, 2001. n2 The Lehmans' then-attorney, Desmond Kolke, filed applications for visa extensions, which were approved and, as a result, the R-visas were valid through June 3, 2003. n3 Ex. A at 2; Ex. B [*3] at 3. In June

2002, approximately one year before the expiration of the R-visas, Attorney Kolke filed paperwork on behalf of the Lehmans to apply to adjust their status to that of permanent residents of the United States. Ex. U at 68 (E. Lehman Decl.) P 13; Ex. U at 72 (A. Lehman Decl.) P 9; Ex. U at 75 (Kolke Decl.) PP 6-7. In February 2003, the Lehmans learned that CIS had misplaced the Lehmans' file, and CIS asked them to re-submit the paperwork. Ex. U at 68 (E. Lehman Decl.) P 15; Ex. U at 72 (A. Lehman Decl.) P 10; Ex. U at 75 (Kolke Decl.) P 8.

> n2 Under United States immigration law, individuals with R-visas have permission to remain in the United States temporarily. The law distinguishes these "nonimmigrants" from "immigrants," who have permission to reside in the United States permanently.

> n3 Individuals who qualify for an R-visa are allowed to remain in the United States to perform religious work for a maximum of five years. 8 U.S.C. § 1101(a)(15)(R)(ii).

On May 14, 2003, several [*4] weeks before the expiration of the Lehmans' R-visas, Attorney Kolke re-filed the paperwork to adjust status. Specifically, he filed the following forms with the CIS Nebraska Service Center: a "Petition for . . . Special Immigrant" (Form I-360), on behalf of Hillcrest Baptist Church, Ex. E at 10-13; an "Application to Register Permanent Resident or Adjust Status" (Form I-485) on behalf of Mr. Lehman, Ex. E at 14-17; and another Form I-485, on behalf of Mrs. Lehman, Ex. F at 19-22. On May 20, 2003, CIS returned the two I-485 applications and fees, stating, in a letter to Mr. Lehman, in pertinent part:

> At this moment, the service does not accept concurrently filed I-360s and I-485s. Only concurrently filed I-140s and I-485s are accepted at the present time. The I-360 petition you filed has been accepted. . . . If your I-360 is approved, you may then file the Employment Based I-485 Applications for you and your spouse.

Ex. G. The "I-140" and "I-360" Forms are filed by employers whereas an "I-485" Form is filed by a person seeking permanent resident status. An "I-140" Form

refers to an Immigrant Petition for Alien Worker that an employer files on behalf of a *non-religious* [*5] worker in order to enable that non-citizen to receive an immigrant visa pursuant to the Immigration and Nationality Act ("INA") § 203(b)(1), (2), or (3), 8 U.S.C. § 1153(b)(1), (2), or (3). An "I-360" Form refers to a Petition for Special Immigrant that an employer files on behalf of a *religious* worker in order to enable that non-citizen to receive an immigrant visa pursuant to INA § 203(b)(4), 8 U.S.C. § 1153(b)(4). Thus, a non-religious worker needs CIS to approve an I-140 Form and an I-485 Form in order to adjust to permanent resident status, and a religious worker needs CIS to approve an I-360 Form and an I-485 Form in order to adjust to permanent resident status.

As of the June 3, 2003 date of the expiration of the Lehmans' R-visas, the I-360 Form was pending with CIS, but CIS had rejected the Lehmans' I-485 applications as prematurely filed. Despite the expiration of the Lehmans' R-visas on June 3, 2003, Attorney Kolke informed Mr. Lehman that he was authorized to stay in the United States and to continue to work based upon the pending I-360 Form. Ex. U at 75 (Kolke Decl.) P 11. On December 2, 2003, 180 days after the R-visas [*6] expired, CIS issued a Request for Evidence, stating that "a form I-360 does not grant nonimmigrant employment authorization" and ordering Mr. Lehman to leave the United States. Ex. I at 26. Attorney Kolke again reassured Mr. Lehman that "because the applications were filed before the R-1 visas expired, he could continue to work and stay in the United States." Ex. U at 76 (Kolke Decl.) P 12. In December 2003, Attorney Kolke re-filed the I-485 applications. Id. P 13.

On March 31, 2004, CIS approved the I-360 Petition for Special Immigrant (religious worker). Ex. K. A letter from CIS that was addressed to Hillcrest Baptist Church stated: "Form I-485 applications may not be filed simultaneously with Form I-360 petitions for *religious workers*. . . . Now that you have received an approval for this beneficiary, he may now file his I-485 application and Form I-765 to maintain employment authorization." Ex. L (emphasis in original). On June 4, 2004, Attorney Kolke again re-filed the I-485 applications, which were received by CIS on June 7, 2004. Exs. M and N. On August 30, 2005, CIS denied the I-485 applications because the Lehmans had filed the forms after their R-visas expired and [*7] because Mr. Lehman engaged in unauthorized work for more than 180 days. Exs. S and

T. CIS's decision to deny the I-485 applications was made pursuant to INA § 245(c)(2), 8 U.S.C. § 1255(c)(2), which provides that INA § 245(a), 8 U.S.C. § 1255(a) (permitting the adjustment of status) does not apply to "an alien . . . who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). In making this decision, CIS concluded that an exception to § 245(c)(2), 8 U.S.C. § 1255(c)(2), in INA § 245(k), 8 U.S.C. § 1255(k), which allows for a 180-day grace period, did not apply because Mr. Lehman worked for an entire year beyond the expiration of his R-1 visa.

The Lehmans hired new counsel, who, on December 22, 2005, filed Motions to Reopen, [*8] which CIS subsequently denied on March 8, 2006. Exs. U, X, and Y. At the same time, the Lehmans' new counsel filed an "Application for Employment Authorization" (Form I-765), which CIS subsequently denied on March 15, 2006. Exs. U-W, Z. CIS explained that it denied Mr. Lehman's employment authorization (Form I-765) because Mr. Lehman's I-485 application for adjustment of status to permanent resident had been denied. Ex. Z. In the decision documenting the denial of employment authorization, CIS explicitly stated that "[t]here is no appeal to this decision." Id. Thereafter, the Lehmans enlisted U.S. Senator Maria Cantwell in an attempt to get CIS to reconsider its denial of the Lehmans' applications to adjust status; however, on June 26, 2006, CIS provided final notice to Senator Cantwell's office that it would not change its decision and it would not reopen the cases. See Ex. AA (Letter dated July 28, 2006, from Senator Cantwell to Mr. Lehman).

On July 24, 2006, Plaintiffs filed the Complaint for Declaratory and Injunctive Relief. Compl., docket no. 1, in this Court.

On August 2, 2006, Mr. and Mrs. Lehman were served with Notices to Appear, which commenced removal proceedings [*9] against them. Gov't Ex. AA, docket no. 11. Mr. and Mrs. Lehman's "master calendar" hearing is set for March 1, 2007, at 1 p.m. before U.S. Immigration Judge Edward Kandler.

**C. Present Motions**

Plaintiffs have filed a Motion for Summary Judgment, docket no. 8. First, Plaintiffs challenge CIS's May 20, 2003 refusal to accept the Lehmans' I-485 applications, which were concurrently filed with Hillcrest Baptist Church's I-360 petition on May 14, 2003. Plaintiffs assert that CIS's decision is a "final agency action" under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701, et seq. Plaintiffs assert that CIS's policy to accept concurrent filings of Form I-140s and Form I-485s, but not to accept concurrent filings of Form I-360s and Form I-485s, see 8 C.F.R. § 235.2(a)(2)(i)(B), n4 is a violation of the Immigration and Naturalization Act ("INA"), and a violation of the Due Process Clause of the Fifth Amendment of the United States Constitution. Second, Plaintiffs challenge CIS's August 30, 2005 denial of Plaintiffs' I-485 applications. They assert that CIS's decision must be reversed in light of CIS's "improper" policy not to accept concurrent [*10] filings of Form I-360s and Form I-485s and in light of misleading information provided by CIS that led the Lehmans to believe they could file the I-485 applications after the I-360 petition was approved. Plaintiffs also argue that the period of "unlawful immigration status" under INA § 245(c)(2), 8 U.S.C. § 1255(c)(2), and the period of "unlawful presence" under INA § 212(a)(9)(B), 8 U.S.C. § 1182(a)(9)(B), n5 should be tolled because of ineffective assistance of counsel. Third, Plaintiffs challenge CIS's March 15, 2006 denial of the "Application for Employment Authorization" (Form I-765) and urge its reversal in light of CIS's May 20, 2003 and August 30, 2005 actions, and the ineffective assistance of counsel provided by Attorney Kolke.

n4 8 C.F.R. § 245.2 (a)(2)(i)(B) ("If, at the time of filing, approval of a visa petition filed for classification under . . . section 203(b)(1), (2) or (3) of the Act would make a visa immediately available to the alien beneficiary, the alien beneficiary's adjustment application will be considered properly filed whether submitted concurrently with or subsequent to the visa petition, provided that it meets the filing requirements contained in parts 103 and 245. For any other classification, the alien beneficiary may file the adjustment application only after the Service has approved the visa petition.").

[*11]

n5 8 U.S.C. § 1182(a)(9)(B) ("Any alien (other than an alien lawfully admitted for permanent residence) who . . . has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible.").

In response to Plaintiffs' summary judgment motion, the Government filed Defendants' Cross-Motion to Dismiss, or, In the Alternative, to Stay District Court Proceedings, docket no. 11. The Government moves to dismiss for lack of subject matter jurisdiction, asserting that Plaintiffs have failed to exhaust their administrative remedies because Plaintiffs are able to renew their request for adjustment of status in Immigration Court in connection with the removal proceedings currently pending against them. Alternatively, the Government moves that the case be stayed until the completion of the Lehmans' pending removal proceedings in U.S. Immigration Court in Seattle, and any appeals therefrom, due to the "real chance" those proceedings will moot all or many [*12] of the issues raised in this lawsuit. Other than the cross-motion to dismiss, the Government has not filed an opposition to Plaintiffs' summary judgment motion.

## II. DISCUSSION

**A. Defendants' Cross-Motion to Dismiss, n6 docket no. 11**

n6 The Court declines to stay the matter pending the outcome of the removal proceedings. As a result, the Court's analysis focuses on Defendants' motion to dismiss.

### 1. Motion to Dismiss Standard

On a motion to dismiss under Fed. R. Civ. P. 12(b)(1), even though a defendant moves to dismiss the complaint for lack of subject matter jurisdiction, the plaintiff bears the burden of proving that the Court has jurisdiction to decide the case. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the

burden of establishing the contrary rests upon the party asserting jurisdiction.") (citations omitted). [*13]

### 2. Jurisdiction to Review CIS's Denial of I-485 Applications

Plaintiffs assert that the Court has jurisdiction to hear Plaintiffs' claims under the general federal question jurisdiction statute, which states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Plaintiffs also assert that the Court has subject matter jurisdiction to review CIS's decisions under the APA. The APA provides the general right to judicial review of an agency action as follows: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The APA also establishes when such review is available: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. . . ." 5 U.S.C. § 704. "When an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency [*14] rule, the agency action is 'final for the purposes of [5 U.S.C. § 704]' and therefore 'subject to judicial review under [5 U.S.C. § 702].'" Darby v. Cisneros, 509 U.S. 137, 146 (1993) (quoting the APA). In other words, the APA, 5 U.S.C. § 704, "has limited the availability of the doctrine of exhaustion of administrative remedies to that which the statute or rule clearly mandates." Id. Plaintiffs assert that they had exhausted all administrative remedies on the date of filing the lawsuit because the applicable agency rule expressly denied them a right to appeal. See 8 C.F.R. § 245.2(a)(5)(ii) ("*No appeal lies from the denial of an application [for adjustment of status] by the director,* but the applicant, if not an arriving alien, retains the right to renew his or her application in proceedings [before a U.S. Immigration Judge].") (emphasis added); see also Exs. S and T (CIS's denial of the Lehmans' I-485 applications stated: "The regulations do not provide for an appeal to this decision.").

The Government argues that Plaintiffs have several layers of judicial review available [*15] to them now that removal proceedings have been initiated against them. The Government asserts that the Lehmans have a right to reassert their applications to adjust status before a U.S.

Immigration Judge, then to appeal that decision to the Bureau of Immigration Appeals (the "BIA"), and thereafter, if necessary, to appeal to the Ninth Circuit Court of Appeals. Although Plaintiffs admit that the denial of an application for adjustment of status may be renewed before a U.S. Immigration Judge in removal proceedings, the doctrine of exhaustion of remedies does not apply because there is no statutory or agency rule that requires an appeal before review. See Darby, 509 U.S. at 154 ("an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review."). At the time Plaintiffs filed this lawsuit, n7 there were no further administrative remedies the Lehmans could pursue; the Lehmans had no ability to commence removal proceedings. See 8 C.F.R. § 1003.14(a).

n7 Federal subject matter jurisdiction must exist at the time the action is commenced. Schwarzer, et al., FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 2:90 (Rutter Group 2006). "Subject matter jurisdiction ordinarily depends on the facts as they exist when the complaint is filed," id. at § 2:90.4, and "may not be divested by subsequent events." Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) (dealing with diversity jurisdiction).

[*16]

Courts are split on the question of whether an applicant for adjustment of status can seek judicial review of a denial of the application in district court prior to renewing the request in the context of removal proceedings. The Government relies on numerous cases from out of the Ninth Circuit to argue that there is no judicial review. See Lopez-Flores v. Dep't Homeland Sec., 387 F.3d 773, 776-77 (8th Cir. 2004); Cardoso v. Reno, 216 F.3d 512, 518 (5th Cir. 2000); McBrearty v. Perryman, 212 F.3d 985, 987 (7th Cir. May 11, 2000); Howell v. Immigration and Naturalization Serv., 72 F.3d 288, 293 (2d Cir. 1995); Randall v. Meese, 854 F.2d 472, 474-75 (D.C. Cir. 1988). Lopez-Flores is irrelevant because the Eighth Circuit suspended a reinstatement of a prior deportation order to permit an applicant for adjustment of status to renew his application in the context of a subsequent deportation proceeding; the case

did not address the issue of whether a district court has jurisdiction. See Lopez-Flores, 387 F.3d at 776-77. The other cases, however, do hold that the district court lacks [*17] jurisdiction to review a denial of adjustment of status because of the availability of review in the context of removal proceedings. See Cardoso, 216 F.3d at 518 (holding that applicant did not exhaust administrative remedies because she could renew her request upon the commencement of removal proceedings); McBrearty, 212 F.3d at 987 (holding that "[t]he suit was premature, since . . . plaintiffs . . . could obtain review of the district director's decision by the Board of Immigration Appeals if and when the immigration service institutes removal (i.e., deportation) proceedings against them"); Howell, 72 F.3d at 293 (holding that "the district court lacked jurisdiction to review the district director's denial of Howell's application for adjustment of status once deportation proceedings commenced, n8 because she failed to exhaust her administrative remedies"); Randall, 854 F.2d at 482 (holding that action to review director's denial of adjustment of status was premature, under circumstances where deportation proceedings had commenced and appeal was pending before Board of Immigration Appeals).

n8 The Second Circuit in Howell expressly did not reach the question of whether a district court possesses subject matter jurisdiction when removal proceedings have not commenced. 72 F.3d at 293 n.5. Subsequently, the district court in Chen v. Reno, 1997 WL 316482 at *2 (S.D.N.Y. June 11, 1997), held that the district court has jurisdiction if deportation proceedings have not been commenced because the "litigant has a right to a prompt resolution of decisions concerning his status affording him the opportunity to make personal, educational, or career plans."

[*18]

Plaintiffs rely on Ninth Circuit and United States Supreme Court cases to support their argument that there is district court jurisdiction to review a district director's denial of adjustment of status. In holding that a district court "has jurisdiction to review a denial of status adjustment," the Ninth Circuit in 1986 reasoned that although "[d]eterminations made during a deportation hearing, including final deportation orders, are reviewable exclusively by the Court of Appeals . . . ..

2007 U.S. Dist. LEXIS 12782, *18

Page 6

[o]ther determinations, ancillary to an application for permanent residency, must be challenged first in district court." Jaa v. United States Immigration and Naturalization Serv., 779 F.2d 569, 571 (9th Cir. 1986). In Jaa, the Ninth Circuit rejected the Government's assertion that the applicant had failed to exhaust her administrative remedies. Id. The Ninth Circuit in Jaa relied on the United States Supreme Court's decision in Cheng Fan Kwok v. Immigration and Naturalization Service, which held that the judicial review provisions of § 106(a) of the INA, codified at 8 U.S.C. § 1105a, "embrace only those determinations made during a [deportation] [*19] proceeding" and that "[i]n situations to which the provisions of § 106(a) are inapplicable, the alien's remedies would, of course, ordinarily lie first in an action brought in an appropriate district court." 392 U.S. 206, 210, 216 (1968). In support of its ruling in favor of the district court's exercise of jurisdiction, the Ninth Circuit in Jaa also cited to Galvez v. Howerton, 503 F. Supp. 35, 38 (C.D. Cal. 1980), a district court case in which the Court held that it had jurisdiction under 8 U.S.C. § 1329 n9 and 8 U.S.C. § 1331 to review a denial of an adjustment of status. Ten years after Jaa, and despite intervening development of out-of-circuit authority to the contrary, such as in Howell (2d. Cir. 1995) and Randall (D.C. Cir. 1988), the Ninth Circuit has twice again held that a district court has jurisdiction to review a denial of an application for adjustment of status. See Chan v. Reno, 113 F.3d 1068, 1071 (9th Cir. 1997) (citing Jaa and Tang); Tang v. Reno, 77 F.3d 1194, 1196 (9th Cir. 1996) (citing 28 U.S.C. § 1331). [*20]

> n9 This statutory section was amended in 1996 to clarify that it only regards jurisdiction for cases *brought by the United States.*

The Court concludes that Jaa, Tang, and Chan are directly on point n10 and are controlling. n11 Accordingly, this Court has jurisdiction to review CIS's denial of the Lehmans' applications for adjustment of status pursuant to 28 U.S.C. § 1331 and the APA, 5 U.S.C. § 702.

> n10 Two other Ninth Circuit cases relied upon by Plaintiffs do not involve applications for an adjustment of status, but they support Plaintiffs' argument that the district director's discretionary decisions do not constitute final

orders of deportation. See Toolee v. Immigration and Naturalization Serv., 722 F.2d 1434, 1437 (9th Cir. 1983) (district court, not court of appeals, has jurisdiction to review district director's denial of a request for an extension of status); Ghorbani v. Immigration and Naturalization Serv., 686 F.2d 784, 791 (9th Cir. 1982) (district court, not court of appeals, has jurisdiction to review district director's denial of a request for reinstatement of student status).

[*21]

> n11 Plaintiffs also heavily rely on a favorable recent Third Circuit case that holds that when no deportation proceedings are pending, a denial of adjustment of status is a final agency action subject to judicial review by the district court pursuant to 28 U.S.C. § 1331 and the APA. See Pinho v. Gonzales, 432 F.3d 193, 200-204 (3d. Cir. 2005).

## 3. Jurisdiction Over Plaintiffs' Other Claims

Plaintiffs' arguments that the Court has jurisdiction over Plaintiffs' other claims (in addition to the claim for adjustment of status) are unopposed by the Government. Plaintiffs first argue that this Court has jurisdiction over Plaintiffs' claim that CIS's policy of refusing to accept concurrently filed applications for adjustment of status, see 8 C.F.R. § 245.2(a)(2)(i)(B), is unlawful. Plaintiffs rely on Espinoza-Gutierrez v. Smith, 94 F.3d 1270, 1273 (9th Cir. 1996), which concluded that the BIA has no jurisdiction to review questions involving the constitutionality of INA statutes and regulations. The Government does not discuss [*22] this argument, regulation or case in its Reply, docket no. 13. Plaintiffs also point out that their claim is ripe because the regulation was applied to the Lehmans when CIS rejected their I-485 applications on May 20, 2003. Cf. Reno v. Catholic Social Servs., 509 U.S. 43, 57-58 (1993) (ripeness requires that the parties are affected in a concrete way). CIS's rejection of the concurrently filed applications subsequently led to the denial of the Lehmans' applications for adjustment of status and Mr. Lehman's application for employment authorization. The Court has jurisdiction over Plaintiffs' claim regarding the constitutionality of CIS's policy not to accept the concurrently filed I-360 and I-485 applications.

Plaintiffs next argue that this Court has jurisdiction over Plaintiffs' claim that the period of "unlawful presence" under INA § 212(a)(9)(B), 8 U.S.C. § 1182(a)(9)(B) must be tolled. Plaintiffs seek a declaratory judgment that the Lehmans have not to date accrued any "unlawful presence." This statutory section would prevent the Lehmans from returning to the United States for ten years if they are forced to leave the United States. Again, [*23] this argument is unaddressed by Defendants in their Reply, docket no. 13. The Court has jurisdiction over Plaintiffs' claim that the period of "unlawful presence" must be tolled.

Lastly, Plaintiffs argue that this Court has jurisdiction over Plaintiffs' claim for review of CIS's denial of Mr. Lehman's request for employment authorization. Plaintiffs rely on two district court cases that held that a district court has jurisdiction to review the denial of a request for employment authorization. See Grijalva v. Ilchert, 815 F. Supp. 328 (N.D. Cal. 1993); Gomez-Arauz v. McNary, 762 F. Supp. 310 (W.D. Okla. 1991). In Grijalva, District Court Judge Weigel exercised jurisdiction to consider plaintiff's motion for a preliminary injunction to enjoin INS from withholding employment authorization documents. 815 F. Supp. at 329-32 (noting that "[b]ecause there is no administrative appeal from an INS decision denying employment authorization, Plaintiff filed a complaint in federal district court."). In Gomez-Arauz, District Court Judge Russel exercised jurisdiction to review INS's denial of the plaintiff's application for employment authorization. [*24] 762 F. Supp. at 312. The Court concluded that INS unlawfully denied the application for employment authorization and ordered the government to grant the plaintiff's employment authorization until such time as final orders are entered on the plaintiff's application for permanent residence. Id. at 315. Again, this argument is unaddressed by Defendants in their Reply, docket no. 13. The Court has jurisdiction over Plaintiffs' claim for review of CIS's denial of Mr. Lehman's request for employment authorization.

**4. REAL ID Act of 2005**

The Government asserts that the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B., 119 Stat. 231 (May 11, 2005) presents an additional barrier to this Court's assuming jurisdiction because the REAL ID Act eliminates district court jurisdiction over orders of removal. The Government relies on two Ninth Circuit

cases in support of its argument. See Martinez-Rosas v. Gonzales, 424 F.3d 926, 928-29 (9th Cir. 2005); Puri v. Gonzales, 464 F.3d 1038 (9th Cir. 2006). In both of these cases, however, an alien filed a habeas petition to challenge an order of removal. Martinez-Rosas, 424 F.3d at 928; [*25] Puri, 464 F.3d at 1040.

Plaintiffs respond that they are not seeking review of a "final order of removal," which would admittedly be governed by the REAL ID Act, 8 U.S.C. § 1252(a). See Pls.' Reply, docket no. 12, at 8 n.3. Plaintiffs contend that "[t]he REAL ID Act does not change the rule that the courts of appeal have jurisdiction to review a 'final order of removal,' INA § 242(a), 8 U.S.C. § 1252(a), while the district courts have jurisdiction to review all other claims 'arising under the Constitution, laws, or treaties of the United States.' 28 U.S.C. § 1331." Id. at 3 n.1.

The Government challenges this assertion made by Plaintiffs and argues that two provisions of the INA § 242, as added or amended by the REAL ID Act, divest the district courts of subject matter jurisdiction. See Defs.' Reply, docket no. 13, at 1-2 (citing INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D) and INA § 242(b)(9), 8 U.S.C. § 1252(b)(9) (referred to hereinafter as "Sections 242(a)(2)(D) and 242(b)(9)").

In light of the new arguments raised in the Government's [*26] Reply, Plaintiffs filed a Surreply, which argues that Sections 242(a)(2)(D) and 242(b)(9) do not preclude this Court's judicial review of decisions made outside of removal proceedings. Pls.' Surreply, docket no. 15, at 1-3. Plaintiffs cite a post-REAL ID Act district court habeas case that transfers to the court of appeals the part of the case seeking judicial review of the order of removal, but retains jurisdiction over the application for adjustment of status that was pending before CIS. See Zhicay v. Sec. of Dep't Homeland Sec., 2005 WL 3180188 at *2 (D. Conn 2005) ("Because [the REAL ID Act of 2005] pertains only to habeas corpus petitions seeking review of orders of removal, this Court retains jurisdiction over Zhicay's other claims.").

The Government's argument that the REAL ID Act precludes jurisdiction is unconvincing because there is no final order of removal at issue in the present case. The Jaa, Tang, and Chan line of cases are still good law demonstrating that the Court has jurisdiction over Plaintiffs' claim for adjustment of status.

**5. Mootness**

Finally, the Government argues that Plaintiffs' lawsuit is moot because they have been [*27] given the relief that they sought in their December 22, 2005 Motion to Reopen, namely, to be placed in removal proceedings so that they can have a hearing before a U.S. Immigration Judge. The Government argues that the Court lacks subject matter jurisdiction over moot claims, relying upon Arizonans for Official English v. Arizona, 520 U.S. 43, 74 (1997) and Picrin-Peron v. Rison & INS, 930 F.2d 773, 775-76 (9th Cir. 1991). Arizonans for Official English involved an employee who was concerned about discharge or other discipline in her state employment as a result of her use of Spanish in the course of her work for the state; the case was held to be moot as a result of the employee's voluntary resignation. See 520 U.S. at 74. Picron-Peron involved a habeas petition that was dismissed as moot upon the petitioner's release from custody. See 930 F.2d at 775-76. These cases show that the Court should look to the relief sought in the underlying complaint to determine whether the case is moot.

The relief Plaintiffs' seek in their Complaint -- to order that the Lehmans I-485 applications should be deemed to have been [*28] properly filed on May 14, 2003 as a result of the illegal policy of refusing to accept concurrently filed I-360 and I-485 applications, to order CIS to approve the Lehmans' I-485 applications, to order CIS not to apply the grounds of ineligibility specified in INA § 212(a)(9)(B) as a result of the ineffective assistance of counsel received by the Lehmans, and to order CIS to issue employment authorization to Mr. Lehman valid from May 14, 2003, until there is a final decision made on his application for adjustment of status -- has not been mooted by the commencement of removal proceedings against them. Accordingly, the case is not moot.

### 6. Conclusion Re: Jurisdiction

The Court has subject matter jurisdiction over Plaintiffs' claims. The Court DENIES Defendants' Cross-Motion to Dismiss, docket no. 11.

### B. Plaintiffs' Motion for Summary Judgment, docket no. 8

#### 1. Summary Judgment Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment [*29] as a matter of law." FED. R. CIV. P. 56(c).

#### 2. Analysis

Except for Defendants' previously discussed Cross-Motion to Dismiss, docket no. 11, Defendants have failed to file papers in opposition to Plaintiffs' Motion for Summary Judgment. "If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Local Rule CR 7(b)(2). The Court deems Defendants' failure to file papers in opposition to Plaintiffs' Motion for Summary Judgment as an admission that Plaintiffs' motion has merit. The Court addresses Plaintiffs' various requests for relief as follows.

The Court declares that CIS's policy to accept concurrent filings of Form I-140s and Form I-485s, but not to accept concurrent filings of Form I-360s and Form I-485s, see 8 C.F.R. § 235.2(a)(2)(i)(B), violates the Equal Protection component of the Due Process Clause of the Fifth Amendment of the United States Constitution. Accordingly, CIS's decision on May 20, 2003 to refuse to accept the Lehmans' Form I-485 applications for adjustment of status violated the Due Process Clause. The Lehmans' Form I-485 applications for adjustment of status [*30] shall be deemed to have been properly filed on May 14, 2003.

The Court declares that CIS's denial of the Lehmans' I-485 applications on August 30, 2005 was erroneous in light of CIS's decision on May 20, 2003 to refuse to accept the Lehmans' Form I-485 applications for adjustment of status. The Court does not reach the issue of whether the Lehmans have met the statutory requirements of INA § 245(a), 8 U.S.C. § 1255(a). The Court ORDERS CIS to make a final decision on the Lehmans' I-485 applications for adjustment of status, in light of CIS's March 31, 2004 approval of the I-360 Petition for Special Immigrant, within 60 days of the entry of this Order.

The Court declares that CIS's March 15, 2006 denial of the Application for Employment Authorization (Form I-765) was erroneous because it was based on the erroneous denial of Mr. Lehman's I-485 application. The Court ORDERS CIS to issue employment authorization to Mr. Lehman valid from May 14, 2003, until there is a

final decision made on his application for adjustment of status. The Court FURTHER ORDERS CIS to make a final decision on Mr. Lehman's application for employment authorization within 60 days of CIS's [*31] final decision on Mr. Lehman's application for adjustment of status.

The Court does not reach the ineffective assistance of counsel and tolling issues presented to the Court as they are mooted by the Court's ruling that the Lehmans' I-485 applications shall be deemed to have been properly filed on May 14, 2003.

### 3. Conclusion Re: Summary Judgment

The Court GRANTS Plaintiffs' unopposed Motion for Summary Judgment, docket no. 8, as outlined herein.

## III. CONCLUSION

The Court has subject matter jurisdiction over Plaintiffs' claims and declines to stay the matter pending the outcome of the removal proceedings. Accordingly, the Court DENIES Defendants' Cross-Motion to Dismiss, or in the Alternative, to Stay District Court Proceedings, docket no. 11.

The Court GRANTS Plaintiffs' unopposed Motion for Summary Judgment, docket no. 8, as outlined herein.

IT IS SO ORDERED.

DATED this 23rd day of February 2007.

Thomas S. Zilly

United States District Judge

# UNITED STATES DISTRICT COURT

NORTHERN _____ District of _____ CALIFORNIA

SHIA ASSOCIATION OF BAY AREA, INC.,
Plaintiff

**SUMMONS IN A CIVIL ACTION**

V.

MICHAEL CHERTOFF, Secretary of the
Department of Homeland Security

CASE NUMBER: C06 05515 - JW

ORIGINAL FILED

SEP 2 1 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

TO: (Name and address of Defendant)

CLAIRE CORMIER
ASSISTANT U.S. ATTORNEY
U.S. ATTORNEY'S OFFICE
150 ALMADEN BLVD., SUITE 900
SAN JOSE, CA 95113

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

ZAHEER ZAIDI
510 NORTH FIRST STREET, SUITE 216
SAN JOSE, CA 95112

an answer to the complaint which is served on you with this summons, within _____ 60 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

RICHARD W. WIEKING

9-20-06

_____          _____
CLERK                                                          DATE

Sandy Morris          Sandy Morris

(By) DEPUTY CLERK

O 440 (Rev. 8/01) Summons in a Civil Action

| RETURN OF SERVICE | | |
|---|---|---|
| Service of the Summons and complaint was made by me[1] | DATE  9/2ð/0ƥ. | |
| NAME OF SERVER *(PRINT)*  Richard Barrett | TITLE  Process Server | |

*Check one box below to indicate appropriate method of service*

☑ Served personally upon the defendant. Place where served:

    Claire Cornier, U.S. Attorney's Office, 150 Almaden Blvd., Suite 900, San Jose, CA 95113

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

| STATEMENT OF SERVICE FEES | | | | |
|---|---|---|---|---|
| TRAVEL | SERVICES | $70.00 | TOTAL | $70.00 |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on    9/20/06  
          Date                  *Signature of Server*

           888 N.1st St., #209, San Jose, CA 95112  
           *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure·

# CIVIL COVER SHEET

JS 44 (Rev 3-99)

S-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

SHIA ASSOCIATION OF BAY AREA, INC.

## DEFENDANTS

MICHAEL CHERTOFF, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, AND ROBERT P. MUELLER. III. DIRECTOR OF THE

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

C 06 05515 JW PVT

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

ZAHEER ZAIDI, ATTORNEY AT LAW
510 N. FIRST STREET, SUITE 216
SAN JOSE, CA 95112

Attorneys (If Known)

OFFICE OF CHIEF COUNSEL
IMMIGRATION AND CUSTOMS ENFORCEMENT
550 KEARNY, SUITE 1000, SAN FRANCISCO, CA

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ■ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury— Med. Malpractice<br>☐ 365 Personal Injury— Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 861 HIA (139 5ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIW W (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS— Third Party 26 USC 7609 | ☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ■ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

COMPLAINT SEEKING ORDER COMPELLING USCIS TO ADJUDICATE I-360 PETITION WITHIN 30 DAYS. 28 USC 1361.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE 09/08/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Zaheer Zaidi, Cal.SBN 184749
510 N. First Street, Suite 216
San Jose, California 95112
Tel: (408) 287-0320
Fax: (408) 287-0516

E-FILING

ORIGINAL FILED

SEP – 8 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

ADR

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

SHIA ASSOCIATION OF BAY AREA, INC.

    Plaintiff,

    v.

MICHAEL CHERTOFF,
Secretary of the Department
of Homeland Security, and
ROBERT P. MUELLER, III,
Director of the Federal
Bureau of Investigation,

    Defendants.

**C06 05515 JW PVT**

No.

COMPLAINT FOR MANDATORY RELIEF

(USCIS File No.
WAC-05-021-52820)

Plaintiff respectfully alleges as follows:

### I. Jurisdiction

The court's jurisdiction to consider the subject matter of this complaint is conferred upon it by 28 U.S.C. §1331 (federal question) and 28 U.S.C. §1361 (mandamus).

### II. The Parties

Plaintiff is a  is a non-profit religious organization, which is tax-exempt under section 501 (c)(3). The organization requires a Resident Aalim [Head Priest] to lead prayers and

1

1 conduct other religious activity. To fulfil this need, plaintiff
2 filed an I-360 Petition for Amerasian, Widower, or Special
3 Immigrant for the beneficiary Dr. Nabi Raza Mir, who has served
4 the organization as the Resident Aalim for more than four and a
5 half years.

6 As Secretary of Homeland Security, Michael Chertoff has
7 delegated his authority to consider such petitions to the United
8 States Citizenship and Immigration Services (CIS), an agency
9 within his Department and, therefore, subject to his control and
10 supervision.

11 The Federal Bureau of Investigation, under the authority
12 delegated to it by defendant Robert P. Mueller, III, is charged
13 with providing security clearances or adverse information, if
14 appropriate, to the CIS in connection with petitions for special
15 immigrants, such as plaintiff's.

16 III. Cause of Action

17 1. Plaintiff filed I-360 Petition for Special Immigrant
18 with the Citizenship and Immigration Services (CIS) for the
19 beneficiary Dr. Nabi Raza Mir, at the California Service Center
20 on April 11, 2005 as authorized by INA section 203(b)(4) and
21 section 101(a)(27)(C).

22 2. As per the information provided by the CIS' website, it
23 is now processing I-360 petitions filed on January 26, 2006.

24 3. Plaintiff made several enquiries into the status of the
25 pending I-360. The CIS' response to Plaintiff's last enquiry was
26 dated January 21, 2006. It said that "the case is not yet ready
27 for decision as the required investigation into your background
28 remain open. If you do not receive a decision or other notice of

2

1  action from us within 6 months of this letter, please contact us
2  by calling our customer service number provided below."

3      4. After waiting for six months, on July 26, 2006, counsel
4  for the Plaintiff sent an e-mail enquiry into the status of the
5  pending application. The e-mail explained that the beneficiary is
6  currently on R-1 [as authorized by INA section 101(a)(15)(R)],
7  which expires on January 1, 2007 and that it cannot be renewed
8  for any further period [as per INA section 101(a)(15)(R)(ii). The
9  e-mail message also stressed that delay in the adjudication of
10 the I-360 is getting to a point where Plaintiff will lose their
11 priest next January.

12      5. On July 27, 2006, the CIS sent the following response:
13 "The case remains open and no decision has been made. You will be
14 notified by mail when a decision has been made. Thank you,
15 Rodriguez, CAO"

16      6. It is worrisome that petitions filed by others as late
17 as January 26, 2006 are now being processed, while Plaintiff's
18 petition filed on April 11, 2005, has still not been adjudicated.

19      7. CIS has not cared to address the Plaintiff's concern
20 that the beneficiary loses his R-1 status on January 1, 2007,
21 leaving Plaintiff with no one else to carry on the duties of a
22 priest or the vocation of a minister. The delay in adjudication
23 process is far beyond the usual time it takes for the CIS to
24 complete the processing of such petitions.

25      8. The Plaintiff or the beneficiary of Plaintiff's petition
26 has engaged in no conduct that would prompt the CIS to provide an
27 adverse security report or prolonged investigation.

28      Consequently, there is no reason why CIS has not completed

3

1 the processing or the adjudication of the Plaintiff's I-360
2 Petition for Special Immigrant.

3                    IV. <u>Relief Requested</u>

4        On the ground that defendants owe a duty to plaintiff under
5 28 U.S.C. §1361 to adjudicate its Petition for Special Immigrant
6 within reasonable time and that they have failed to do so,
7 plaintiff respectfully asks the court to issue a writ of mandate
8 compelling the defendants to complete the processing and
9 adjudicate plaintiff's application within 30 days, and for such
10 other relief as the court may deem proper.

11 Dated: September 8, 2005              Respectfully submitted,

12

13
                                        _____
14                                      Zaheer Zaidi
                                        Attorney for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    4

```
 1  Zaheer Zaidi, Cal.SBN 184749
    510 N. First Street, Suite 216
 2  San Jose, California 95112
    Tel: (408) 287-0320
 3  Fax: (408) 287-0516

 4

 5

 6

 7

 8              UNITED STATES DISTRICT COURT

 9            NORTHERN DISTRICT OF CALIFORNIA

10
    SHIA ASSOCIATION OF BAY        )
11  AREA, INC.                     )
                                   )   No.
12      Plaintiff,                 )
                                   )
13      v.                         )   CERTIFICATE OF SERVICE WITH
                                   )   VERIFICATION
14  MICHAEL CHERTOFF,              )
    Secretary of the Department    )   (USCIS File No.
15  of Homeland Security, and      )   WAC-05-021-52820)
    ROBERT P. MUELLER, III,        )
16  Director of the Federal        )
    Bureau of Investigation,       )
17                                 )
        Defendants.                )
18  _____ )

19

20      Now comes Plaintiff in the foregoing complaint, and through

    his attorney and under penalty of perjury, declares the facts
21
    herein above alleged are true, except those made on information
22
    and belief, and as to those, believes them to be true.
23

24

25

26  _____
                        Zaheer Zaidi
27

28
```

CERTIFICATE OF SERVICE

1

2    The undersigned hereby certifies that he is self-employed in

3 Santa Clara County, California, and is a person of such age and

4 discretion to be competent to serve papers. The undersigned

5 further certifies that he is causing a copy of the following

6 COMPLAINT FOR MANDATORY RELIEF to be served this date upon the

7 party in this action by first class mail by placing a true copy

8 thereof in a sealed envelope with postage thereon fully prepaid

9 in the U.S. mail box to the parties addressed as follows:

10 Michael Chertoff, Secretary
   U.S. Department of Homeland Security
11 Washington, DC 20528

12 Robert P. Mueller, Director
   Federal Bureau of Investigations
13 935 Pennsylvania Ave, NW Washington, DC 20535

14 Office of the Chief Counsel
   Immigration and Customs Enforcement
15 550 Kearny, Suite 1000
   San Francisco, CA 94108

16
   US Citizenship and Immigration Services
17 Director, California Service Center
   24000 Avila Road, 2nd Floor
18 Laguna Niguel, CA 92677

19    I declare under penalty of perjury under the laws of the

20 State of California that the foregoing is true and correct.

21    Executed this __8th__ day of September, 2006 at San Jose,

22 California.

23

24

25
                                    ZAHEER ZAIDI
26

27

28

                              6

1 | KEVIN V. RYAN, CSBN 118321
United States Attorney
2 | JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
3 | Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
4 | Assistant United States Attorney

5 |     450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
6 |     Telephone: (415) 436-7124
FAX: (415) 436-7169
7 |
Attorneys for Defendant
8 |

9 |                    UNITED STATES DISTRICT COURT

10 |                 NORTHERN DISTRICT OF CALIFORNIA

11 |                          SAN JOSE DIVISION

12 | SHIA ASSOCIATION OF THE BAY AREA,              )
INC.,                                          ) No. C 06-5515 JW(PVT)
13 |                                                )
                                                   )
14 |             Plaintiff,                         )
                                                   )
15 |        v.                                      ) JOINT STIPULATION TO VACATE
                                                   ) DATES; AND [PROPOSED] ORDER
16 | MICHAEL CHERTOFF, Secretary of the            )
Department of Homeland Security; et al.,           )
17 |                                                )
             Defendants.                           )
18 | _____)

19 |        On December 5, 2006, Plaintiff filed a motion for preliminary injunction, requesting that

Defendants adjudicate Plaintiff's Form I-360 Petition for Special Immigrant with the United States
20 |
Citizenship and Immigration Services ("USCIS") on behalf of beneficiary Dr. Nabi Riza Mir by
21 |
December 21, 2006. The parties also stipulated to an expedited briefing schedule and a hearing on
22 |
the motion for preliminary injunction on December 11, 2006, at 9:00a.m.
23 |
        Defendants agree to adjudicate Plaintiff's Form I-360 application by December 29, 2006.
24 |
Therefore, the parties agree to vacate the December 11, 2006 hearing on the preliminary
25 |
injunction. The parties further agree to vacate the January 8, 2007 hearing for Defendants' motion
26 |
for summary judgment and suspend briefing and agree to inform the Court by January 2, 2007, as
27 |
to whether the parties will stipulate to dismiss this case or take further action.
28 |

Stipulation to Vacate Dates
C06-5515 JW

1

2 Dated: December 7, 2006

Ila C. Deiss
3
Assistant United States Attorney
4 Attorney for Defendants

5
Dated: December 7, 2006
6
Zaheer Zaidi
7 Attorney for Plaintiff

8

9
ORDER
10

11
IT IS SO ORDERED.
12

13
Dated:
14
JAMES WARE
15 United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

Stipulation to Vacate Dates
C06-5515 JW                              2

1 | KEVIN V. RYAN, CSBN 118321
United States Attorney
2 | JOANN M. SWANSON, CSBN 88143
Assistant United States Attorney
3 | Chief, Civil Division
ILA C. DEISS, NY SBN 3052909
4 | Assistant United States Attorney

5 | 450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
6 | Telephone: (415) 436-7124
FAX: (415) 436-7169
7 |
Attorneys for Defendant
8 |

9 |                    UNITED STATES DISTRICT COURT

10 |                   NORTHERN DISTRICT OF CALIFORNIA

11 |                         SAN JOSE DIVISION

12 | SHIA ASSOCIATION OF THE BAY AREA,
INC.,                                    )   No. C 06-5515 JW(PVT)
13 |                                          )
                    Plaintiff,               )
14 |                                          )
              v.                             )   JOINT STIPULATION TO EXTEND DATE;
15 |                                          )   AND [PROPOSED] ORDER
     MICHAEL CHERTOFF, Secretary of the      )
16 | Department of Homeland Security; et al., )
                                             )
17 |                    Defendants.           )
                                             )
18 |
        On December 8, 2006, the Court approved the parties' stipulation to vacate hearing dates. The
19 |
parties further agreed in that stipulation to inform the Court by January 2, 2007, as to whether the
20 |
parties will stipulate to dismiss this case or take further action. Currently a case management
21 |
conference is set for December 18, 2006. The parties hereby stipulate, subject to the approval of
22 |
the Court, to extending the case management conference to January 8, 2007 at 10:00 a.m. and will
23 |
provide the Court with a joint case management statement by January 2, 2007, or a joint request to
24 |
dismiss the action.
25 | ///
26 | ///
27 | ///
28 |

Second Stipulation to Extend Date
C06-5515 JW

1

2  Dated: December 13, 2006
                                          Ila C. Deiss
3                                         Assistant United States Attorney
                                          Attorney for Defendants
4

5
   Dated: December 13, 2006
6                                         Zaheer Zaidi
                                          Attorney for Plaintiff
7

8

9
                                          **ORDER**
10

11
   **IT IS SO ORDERED.**
12

13
   Dated:
14                                        JAMES WARE
                                          United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

   Second Stipulation to Extend Date
   C06-5515 JW                              2

1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT
8                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
9                            SAN JOSE DIVISION
10  Shia Association of Bay Area, Inc.,              NO. C 06-05515 JW
11            Plaintiffs,                    **ORDER VACATING CASE**
                                             **MANAGEMENT CONFERENCE**
    v.
12
    Michael Chertoff, et al.,
13
              Defendants.
14  _____/
15       In light of the parties' stipulation to vacate the hearing on the preliminary injunction and
16  Defendants' motion for summary judgment, the Court also vacates the case management conference
17  presently scheduled for December 18, 2006. The Court will reschedule the conference, if necessary,
18  upon receipt of the parties' update as to the status of the case on January 2, 2007.
19
20  Dated: December 13, 2006
                                                    JAMES WARE
21                                                  United States District Judge
22
23
24
25
26
27
28

*United States District Court*
*For the Northern District of California*

1  KEVIN V. RYAN, CSBN 118321
   United States Attorney
2  JOANN M. SWANSON, CSBN 88143
   Assistant United States Attorney
3  Chief, Civil Division
   ILA C. DEISS, NY SBN 3052909
4  Assistant United States Attorney

5  450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
6  Telephone: (415) 436-7124
   FAX: (415) 436-7169
7
   Attorneys for Defendants
8

IT IS SO ORDERED

Judge James Ware

9              UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

11                  SAN JOSE DIVISION

12  SHIA ASSOCIATIONS OF BAY AREA, INC.,      )
                                              )  No. C 06-5515 JW (PVT)
13              Plaintiff,                     )
                                              )
14       v.                                    )
                                              )  STIPULATION TO DISMISS; AND
15  MICHAEL CHERTOFF, Secretary of the        )  [PROPOSED] ORDER
    Department of Homeland Security, and      )
16  ROBERT P. MUELLER, III, Director of the   )
    Federal Bureau of Investigation,          )
17                                            )
                Defendants.                    )
18  _____)

19  Plaintiff, by and through their attorney of record, and Defendants, by and through their

20  attorneys of record, hereby stipulate, subject to the approval of the Court, to dismissal of the above-

21  entitled action without prejudice in light of the fact that the United States Citizenship and

22  Immigration Services adjudicated Plaintiff's Petition for Special Immigrant (Form I-360) on

23  December 29, 2006.

24       Each of the parties shall bear their own costs and fees.

25  ///

26  ///

27

28

Stip. to Dismiss
C06-5515 JW                                   1

1    **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2    Ila Casy Deiss ila.deiss@usdoj.gov
     Zaheer Zaidi zaheer_z@pacbell.net
3

4
     **Dated: December 13, 2006**                    **Richard W. Wieking, Clerk**
5

6                                                     By:___ **/s/ JW Chambers**_____
                                                          **Elizabeth Garcia**
7                                                         **Courtroom Deputy**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

1  Date: January 2, 2006                              Respectfully submitted,

2                                                      KEVIN V. RYAN
                                                       United States Attorney
3

4
                                                       /s/
5                                                   .  ILA C. DEISS
                                                       Assistant United States Attorney
6                                                      Attorneys for Defendants

7

8

9
   Date: January 2, 2006                               /s/
10                                                     ZAHEER ZAIDI
                                                       Attorney for Plaintiff
11

12

13                                    **ORDER**

14    Pursuant to stipulation, IT IS SO ORDERED.

15

16    DATED: January 3, 2007

17                                                     JAMES WARE
                                                       United States District Judge
18

19

20

21

22

23

24

25

26

27

28

      Stip. to Dismiss
      C06-5515 JW                          2