```
Mary Beth Kaufman, Esq. (SBN 228570)
Jill Stanton, Esq. (SBN 121084)
Law Offices of Jill Stanton
400 Montgomery Street, Suite 810
San Francisco, CA 94104
Phone: (415) 392-6161
Fax: (415) 392-8208
lawstan@pacbell.net
```



E-FILING

ORIGINAL FILED
07 JUN 25 PM 2:55
RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA S.J.

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE, CALIFORNIA

| | |
|---|---|
| SHI'A ASSOCIATION OF THE BAY AREA; DR. NABI RAZA MIR; SYEDA ZAHERA; AHMED MIR; ALI MIR,<br><br>  Plaintiffs,<br><br>vs.<br><br>MICHAEL CHERTOFF, Secretary, Department of Homeland Security;<br><br>ALBERTO GONZALES, Attorney General, United States;<br><br>EMILIO GONZALEZ, Director, United States Citizenship & Immigration Services;<br><br>CHRISTINA POULOS, Director, California Service Center;<br><br>GERARD HEINAUER, Director, Nebraska Service Center,<br><br>  Defendants. | No. _____<br><br>C07 03328 JW PVT<br><br>Plaintiffs' Memorandum of Points and Authorities in Support of Ex Parte Application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction; [Proposed] Order<br><br>Date:<br>Time:<br>Courtroom: |

Plaintiffs' Memorandum of Points and Authorities
in Support of Ex Parte Application for TRO

- 1 -

# I. **INTRODUCTION**

Plaintiffs, Shi'a Association of the Bay Area ("SABA"), Dr. Nabi Raza Mir ("Dr. Mir"), his wife, Ms. Syeda Zahera ("Ms. Zahera"), and their two older sons, Ahmed Mir, and Ali Mir, submit this memorandum of points and authorities in support of their application, pursuant to Fed. R. Civ. P. 65, for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction restraining Defendants, Michael Chertoff, Secretary of the Department of Homeland Security ("DHS"), et al. (collectively "the Government"), from (1) further calculating Plaintiffs' continued presence in the United States towards the number of days they have accrued "unlawful status" or "unlawful presence," under Immigration and Nationality Act ("INA") §§ 245(k)(2)(A), 212(a)(9)(B), 8 U.S.C. §§ 1255(k)(2)(A), 1182(a)(9)(B); and (2) calculating any time Dr. Mir continues to work as a minister for SABA towards the calculation of a period of unauthorized employment under INA § 245(k)(2)(B), 8 U.S.C. § 1255(k)(2)(B).

Plaintiff Dr. Nabi Raza Mir ("Dr. Mir") has served as the Minister[1] of the Shi'a Association of the Bay Area ("SABA") since

---

[1] Due to the lack of an equivalent English nomenclature for a Shi'a cleric, Dr. Mir is referred to with various titles,

Plaintiffs' Memorandum of Points and Authorities
in Support of Ex Parte Application for TRO

- 2 -

January of 2002. SABA is a prestigious Shi'a Muslim community institution and place of worship serving over 200 families in the Bay Area. Dr. Mir, his wife, and two older children are nationals of India, who maintained valid non-immigrant religious worker status (R-1 and R-2 visas) until their status expired on January 1, 2007. On April 11, 2005, nearly two years before their non-immigrant status was to expire, SABA filed an I-360 petition for Dr. Mir to immigrate as a "special religious worker." The approval of the petition would allow Dr. Mir to continue to serve as SABA's minister, and would permit Dr. Mir and his family to qualify for permanent residence in the United States.

Following a lengthy delay in the government's adjudication of SABA's petition, and nearing the date of expiration of their Minister's visa, SABA sought mandatory relief in United States District Court, in the Northern District of California, on September 8, 2006. In its complaint with the District Court, SABA sought prompt adjudication of the I-360 by the Department of Homeland Security ("DHS"). In a joint stipulation, DHS agreed to adjudicate SABA's petition for Dr. Mir before December 29, 2006.

---

including Minister, Resident Aalim, imam, priest, and Director of Religious Affairs.

Subsequently, DHS sent a 19-point Request for Evidence ("RFE") to SABA, in which it required SABA and Dr. Mir to submit additional documentation and explanations by December 18, 2006. SABA timely provided voluminous and detailed responses to the RFE. However, on December 29, 2006 DHS denied SABA's I-360 petition for their Minister of five years.

SABA immediately filed an administrative appeal of the decision to the Administrative Appeals Office ("AAO"). Then, on May 29, 2007, SABA filed a new I-360 petition for Dr. Mir, based on a new qualifying period, and provided additional documentation addressing the concerns that DHS had raised in its last RFE. Concurrently with the second I-360 petition, Dr. Mir, his wife, and two older children filed I-485 applications for adjustment of status to permanent residence and accompanying applications for interim employment authorization.[2] However, DHS unlawfully rejected the adjustment of status and work authorization applications on June 6, 2007. Counsel received the rejected applications on June 20, 2007.

---

[2] Under INA § 245(a), 8 U.S.C. § 1255(a), a non-citizen who is in the United States pursuant to a legal entry, has a visa available, and is "admissible," may adjust his or her status to that of a permanent resident in the United States, rather than having to consular process through a U.S. Embassy abroad. To apply for "adjustment of status," the applicant files form I-485 with USCIS. By operation of regulation, while the I-485 is pending with USCIS, the alien is considered to be in a period of

Plaintiffs' Memorandum of Points and Authorities
in Support of Ex Parte Application for TRO

- 4 -

On June 14, 2007, DHS's denial of the first I-360 petition was vacated by the AAO and remanded to the District Director of the California Service Center — who is responsible for the adjudication of the first religious worker petition filed by SABA on behalf of Dr. Mir -- primarily because the petition had been denied on grounds that were never raised in DHS's 19-point RFE.

As a result of the government's previous delay of almost 2 years, and its subsequent refusal to accept concurrently-filed I-485 applications, Dr. Mir and his family are at imminent risk of accruing over 180 days of "unlawful presence," which would bar them from adjustment of status under INA § 245(k)(2)(A), 8 U.S.C. § 1255(k), and make them ineligible for re-entry to the United States for 3 to 10 years under INA § 212(a)(9)(B), 8 U.S.C. § 1182(a)(9)(B). Furthermore, if SABA continues to employ Dr. Mir as its Minister, Dr. Mir will be barred from adjustment of status for engaging in unlawful employment for more than 180 days. INA § 245(k)(2)(B), 8 U.S.C. § 1255(k)(2)(B). In order to prevent such irreparable harm, the Court should grant this request for a Temporary Restraining Order.

---

authorized stay and is entitled to work authorization. 8 C.F.R.

## II. ARGUMENT

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n. 2 (1977); *Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F.Supp.2d 1111, 1126 (E.D.Cal. 2001). A preliminary injunction will be granted upon a showing of either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) serious questions regarding the merits and that the balance of hardships tips sharply in favor of the moving party. *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1158 (9th Cir. 2006); *Cadence Design Systems, Inc., v. Avant! Corp.*, 125 F.3d 824, 928 (9th Cir. 1997).

These two formulations "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1155 (9th Cir. 2006). In considering a request for a temporary restraining order a court must remain mindful that such relief is aimed primarily at preserving the status quo pending a full hearing on a preliminary injunction. *Los Angeles Mem. Coliseum Comm'n v.*

---

§ 274a.12(c)(9).

*National Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980) ("fundamental principle" governing preliminary injunctive relief is the need to maintain the status quo prior to determination on the merits).

In this case, Plaintiffs have demonstrated serious questions on the merits, probable success on the merits, irreparable harm if this request is not granted, and that the balance of hardships sharply tips in their favor.

**A.  Plaintiffs have Demonstrated Serious Questions on the Merits and Probable Success on the Merits.**

Plaintiffs' Complaint raises serious legal questions regarding the Government's disparate treatment of religious workers, which violates Plaintiffs' Constitutional right to equal protection under the law. While the INA does not differentiate between a religious and non-religious worker's right to file an application for adjustment of status concurrently with the employer's visa petition, the agency regulations do not allow religious workers to file concurrently. 8 C.F.R. § 245.2(a)(2)(B).

Such disparate treatment undoubtedly raises a colorable claim under the Equal Protection Clause of the Constitution, since it results in religious workers being barred from employment authorization and permission to travel while the I-360 petition for them is pending, and results in the accrual of

Plaintiffs' Memorandum of Points and Authorities
in Support of Ex Parte Application for TRO

unlawful presence in cases, like Dr. Mir's, where adjudication of the I-360 is delayed.

Additionally, Plaintiffs' Complaint raises serious claims under the First Amendment, as Plaintiff SABA is at imminent risk of losing its Minister, and its ability to offer religious services and guidance to 200 Shi'a Muslim families, thus violating their Constitutional right to free exercise of religion. Finally the Complaint raises a Procedural Due Process claim due to unnecessary government delay, which has put Plaintiffs in the legally vulnerable position they are in today.

The Plaintiffs are also likely to succeed on the merits. On February 23, 2007 the United States District Court for the Western District of Washington found that the Government's policy to accept concurrent filings for non-religious workers but to refuse concurrent filings for religious workers under 8 C.F.R. §235.2a)(2)(i)(B), "violates the Equal Protection component of the Due Process Clause of the Fifth Amendment of the United States Constitution." *Hillcrest Baptist Church v. USA*, C06-1042 TSZ (W.D.Was 2007). The Court thus found that the Government's refusal to accept the applications violated the Plaintiffs' constitutional rights. *Id*.

**B. Plaintiffs Will Suffer Irreparable Injury if the Government is not Enjoined.**

If the Government is not 1) enjoined from calculating Plaintiffs' unlawful presence and from finding that Dr. Mir engaged in work without authorization; or, alternatively, 2) compelled to accept Plaintiffs' I-485 applications as filed on June 1, 2007, Dr. Mir and his wife will fall out of lawful status and become ineligible to adjust their status to that of lawful permanent residence in the United States. Dr. Mir and his family would then have to return to India in order to obtain an immigrant visa that would allow him to work as the Minister for SABA. However, upon their departure from the United States they would incur a penalty under INA § 212(a)(9)(B), 8 U.S.C. § 1182(a)(9)(B), and they would not be allowed to return to the United States for three or ten years, depending on the amount of unlawful presence accrued at the time of their departure.

The Plaintiffs will also suffer the irreparable injury of the violation of their constitutional rights to equal protection under the law, due process, and the free exercise of religion. The regulations' disparate treatment of religious and non-religious workers has an unequal and unjust effect on religious workers such as Dr. Mir. The regulations make a distinction between religious workers and non-religious workers, which the

Plaintiffs' Memorandum of Points and Authorities
in Support of Ex Parte Application for TRO

- 9 -

statute does not make. The regulation's disparate treatment of religious workers is *ultra vires* and "bears [no] fair relationship to a legitimate public purpose." *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

Plaintiff SABA will further suffer irreparable injury if Dr. Mir is unable to continue to serve his congregation while his I-360 is adjudicated. If Dr. Mir is not permitted to accept employment, he will be unable to facilitate the practice of the Shi'a Muslim religion for SABA's members. SABA's and its congregants' First Amendment Right to the free exercise of religion will be violated, and the accumulation of Dr. Mir's unlawful presence will prevent SABA from having their minister for at least three years.

Because of Dr. Mir's close relationship with the congregation and the fact that equally qualified applicants would likely need to be immigrated from abroad, it would be very difficult to replace Dr. Mir. The violation of a First Amendment right always constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005) ("'Under the law of this circuit, a party seeking preliminary injunctive relief in a First Amendment context can

Plaintiffs' Memorandum of Points and Authorities
in Support of Ex Parte Application for TRO

- 10 -

establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim.'"), quoting *Sammartano v. First Judicial Court*, 303 F.3d, 959, 973-74 (9th Cir. 2002).

### C. The Balance of Hardships Tips Sharply in Favor of Plaintiffs.

Should this motion not be granted, Plaintiffs are at risk of irreparable harm — a Congregation's loss of their Minister, a family's loss of the opportunity to remain in the United States, and a learned scholar's ability to continue serving the community to which he has dedicated the last five years. Should the motion be granted, on the other hand, the hardship to the Government is minimal. Ultimately, the Plaintiffs are merely seeking the fair adjudication of their applications and temporary relief from the prejudicial effects of the Government's unreasonable delay in adjudicating their petitions and the illegal and unconstitutional rejection of their adjustment of status applications.

### III. CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that their Ex Parte Application for Temporary Restraining Order, and Order to Show Cause Re: Preliminary Injunction as to Defendants be granted.

Plaintiffs' Memorandum of Points and Authorities
in Support of Ex Parte Application for TRO

- 11 -

Dated: July 25, 2007						Respectfully Submitted,

*(signature)*

Mary Beth Kaufman, Esq.
Jill Stanton, Esq.
Law Offices of Jill Stanton
400 Montgomery Street, Suite 810
San Francisco, CA 94104
Phone: (415) 392-6161
Fax: (415) 392-8208

Plaintiffs' Memorandum of Points and Authorities
in Support of Ex Parte Application for TRO

- 12 -

Mary Beth Kaufman, Esq. (SBN 228570)
Jill Stanton, Esq. (SBN 121084)
Law Offices of Jill Stanton
400 Montgomery Street, Suite 810
San Francisco, CA 94104
Phone: (415) 392-6161
Fax: (415) 392-8208
lawstan@pacbell.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE, CALIFORNIA

| | |
|---|---|
| SHI'A ASSOCIATION OF THE BAY AREA; DR. NABI RAZA MIR; SYEDA ZAHERA; AHMED MIR; ALI MIR,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL CHERTOFF, Secretary, Department of Homeland Security;<br><br>ALBERTO GONZALES, Attorney General, United States;<br><br>EMILIO GONZALEZ, Director, United States Citizenship & Immigration Services;<br><br>CHRISTINA POULOS, Director, California Service Center;<br><br>GERARD HEINAUER, Director, Nebraska Service Center,<br><br>Defendants. | No. _____<br><br>[Proposed] Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction<br><br>Date:<br>Time:<br>Courtroom: _____ |

[PROPOSED] TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW CAUSE    - 1 -

After considering the moving papers filed in this action, the Court finds:

(1) that this is a proper case for issuance of an order to show cause; and

(2) that, unless the Court issues a temporary restraining order, Plaintiffs will suffer irreparable injury before the matter can be heard on formal notice.

**IT IS ORDERED that:**

1. Defendants appear before this Court on _____, at \_\_\_\_\_, to show cause why a preliminary injunction should not be issued, enjoining them from calculating Plaintiffs' continued presence in the United States towards their "unlawful presence" or their periods of unauthorized employment in the United States.

2. Pending the hearing on the order to show cause, Defendants, their agents, officers, employees, and representatives, and all persons acting in concert or participating with them, be enjoined from calculating Plaintiffs' continued stay in the United States towards their "unlawful status," periods of unauthorized employment, or "unlawful presence" pursuant to INA

§§ 245(k) and 212(a)(9), 8 U.S.C. §§ 1255(k), 1182(a)(9).

3. A copy of the complaint, declaration(s), and memorandum of points and authorities, together with a copy of this order to show cause and temporary restraining order, be served on defendant no later than _____.

**SO ORDERED.**

DATE:_____          _____
                                UNITED STATES DISTRICT JUDGE

[PROPOSED] TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW CAUSE      - 3 -