UNITED STATES DISTRICT COURT
For the Northern District of California
San Jose, CA

Civil No. C-07-03328

SHI"A ASSOCIAION of the BAY AREA;  )
Dr. Nabi Raza Mir; Syeda Zahera;        )
Ahmed Mir; Ali Mir.                          )
                                                      )
                      Plaintiffs,              )
           vs.                                    )
                                                      )
Michael Chertoff, Secretary, Department  )
of Homeland Security; Alberto Gonzales,  )
Attorney General, United States;            )
Emilio Gonzales, Director, United States  )
Citizenship & Immigration Services;        )
Christina Poulos, Director, California      )
Service Center; Gerard Heinauer, Director  )
Nebraska Service Center                     )
                                                      )
                      Defendants.            )
                                                      )

Declaration of Joseph Fierro

I, Joseph Fierro, pursuant to 28 U.S.C. § 1746, make the following declaration:

1).      I am a Supervisory Center Adjudications Officer, California Service

Center, U.S. Citizenship and Immigration Services (USCIS), an agency within the U.S.

Department of Homeland Security (DHS), and I am presently stationed in Laguna Niguel,

California.   I have been employed by USCIS, including its predecessor, the former U.S.

Immigration and Naturalization Service, since 1993..

2).    In October 2000 , I assumed my present position of Supervisory Center Adjudications Officer in the Office of Adjudications in Legacy INS and now USCIS.

3).    As the Supervisory Center Adjudications Officer, I am responsible for supervising the adjudication of applications for adjustment of status, Forms I-485, family based immigrant visa petitions, and Special Immigrant Religious Worker Petitions, Form I-360, by Center Adjudication Officers at the California Service Center. My official duties involve the subject matter of this declaration.

4).    In February 2002 Plaintiff Nabi Reza Mir entered the United States on an R-1 nonimmigrant visa as a religious worker. Plaintiff Mir's R-1 status was extended by USCIS on December 5, 2004 valid until January 1, 2007. On April 12, 2005, Plaintiff the Shi'a Association of the Bay Area, also known as SABA, (Shi'a Association) filed an I-360, "Special Immigrant," petition on Plaintiff's Mir's behalf. On November 13, 2006 USCIS conducted a site check of Plaintiff SABA's premises and interviewed Plaintiff Mir. On December 29, 2006, USCIS denied the I-360 petition. Plaintiff SABA filed an appeal of the denial with USCIS's Administrative Appeals Office (AAO) on January 30, 2007. The AAO withdrew the denial and remanded the case to USCIS on June 14, 2007 to afford the petitioner a final opportunity to remedy deficiencies in the record; specifically whether religious work is the beneficiary's only source of income and whether the beneficiary has been engaged solely as a minister both during and after the qualifying period from 2003-2005.

5)    On May 29, 2007, the Shi'a Association filed a second I-360 petition for the Plaintiff. Concurrently with the I-360 petition, the Plaintiff filed an I-485 application for adjustment of status and an I-765, an application for employment authorization. USCIS

rejected and returned the I-485 application and the I-765 on June 6, 2007, because USCIS regulations do not allow concurrent filing in religious worker petitions.

6).    Concurrent filing for I-140, "Immigrant Petition for Alien Worker," was implemented by the former Immigration and Naturalization Service (INS) as an accommodation for business customers and to add efficiency to USCIS processing. Concurrent filing was not mandated by statute but was established to further three goals: (1) improving customer service; (2) increasing processing efficiency; and (3) eliminating the delay between adjudication of the Form I-140 and the subsequent filing of the Form I-485 and related applications for interim benefits such as the Form I-765, "Employment Authorization," and Form I-131, "Travel Document."

7).    This policy decision to allow concurrent filing for I-140s was based on research in the area of employment-based visa programs of the U.S. that indicated that recruiters find that many talented employees worldwide are increasingly unwilling to tolerate the long waits and uncertainty entailed in immigrating to the United States. When professional workers encounter long delays, U.S. employers are at a disadvantage when recruiting foreign national job candidates who may go to Europe, Canada, Australia and other countries where knowledge workers face fewer immigration difficulties. This effect is quantifiable if, for example, the absence of a critical employee delays the release of new products to the market because delays in products translate into delays in revenue. To the extent that a foreign competitor is able get its products to market before the U.S. firm is able to, the profits and jobs that result from this competitive advantage go overseas.

8).    Concurrent filing has never been allowed for religious workers based on the historically high incidence of fraud. In March 1999, the Governmental Accountability Office (GAO) identified incidents of fraud in the religious worker program. GAO, Issues Concerning the Religious Worker Visa Program, Report GAO-NSIAD-99-67 (March 26, 1999). The report stated that the fraud often involved false statements by petitioners about length of time that the applicant was a member of the religious organization, the qualifying work experience, and the position being filled. The report also noted problems with the applicants making false statements about their qualifications and exact plans in the United States. USCIS's Office of Fraud Detection and National Security (FDNS) developed and implemented "The Religious Worker Benefit Fraud Assessment" to measure the integrity of specific immigrant applications in 2006. The assessment entailed the review of 220 pending and completed I-360 Special Immigrant Religious Worker cases filed over a six month period. The assessment confirmed that there was a 33% rate of fraud in the religious worker program.

9).    Due to the high incidence of fraud, allowing religious workers to file concurrently has a higher probability of damaging the integrity of the immigration system because it encourages filings by aliens who are not eligible for classification as religious workers, but who nonetheless may be able to obtain interim benefits, such as interim employment or advance travel authorization, while the adjustment applications are pending with USCIS. USCIS requires the adjudication of the I-360 prior to the filing of the I-485 to ensure the integrity of the immigration system by making sure that all religious worker petitions are sufficiently reviewed and adjudicated before any substantive benefits are granted.

10).    The decision not to extend concurrent filing to include religious workers is a matter of agency procedure and practice. USCIS has determined that any benefits that may result from concurrent filing do not outweigh the detrimental effects on the integrity of the immigrant religious worker program.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.


7/18/07
_____
Date

_Joseph Fierro_
_____
Joseph Fierro
Supervisory Adjudications Officer
California Service Center
Department of Homeland Security
U.S. Citizenship & Immigration Services
Laguna Niguel, California