**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                       SAN JOSE DIVISION

12  Shi'a Association of the Bay Area, et al.,        NO. C 07-03328 JW

13              Plaintiffs,        **ORDER DISMISSING COMPLAINT;**
        v.                        **STAYING EFFECTIVE DATE**
14

    Michael Chertoff, et al.,
15

16              Defendants.
                                        /

17                       **I.  INTRODUCTION**

18        This is an action filed by the Shi'a Association of the Bay Area ("SABA") and Dr. Nabi

19  Raza Mir, Syeda Zahera, Ahmed Mir and Ali Mir (collectively, "the Mirs") (collectively,

20  "Plaintiffs") for declaratory and injunctive relief against Michael Chertoff, Secretary of the

21  Department of Homeland Security and Alberto Gonzales, Attorney General (collectively,

22  "Defendants") arising from proceedings before the United States Citizenship and Immigration

23  Services ("USCIS").[1]

24        Before the Court is Plaintiffs' Motion for an Order to Show Cause Re: Preliminary

25  Injunction. (hereafter, "Motion," Docket Item Nos. 4, 14.)  The Court conduced a hearing on July

26  30, 2007.  Based on the papers submitted to date and oral arguments of counsel, the Court DENIES

27  _____

28        [1]  (Complaint for Declaratory, Injunctive, and Mandatory Relief, hereafter, "Complaint,"
    Docket Item No. 1.)

1  Plaintiffs' request for a Preliminary Injunction and DISMISSES the action for lack of subject matter

2  jurisdiction.

3                                              **II.  BACKGROUND**

4          Plaintiffs allege as follows:

5          Dr. Nabi Raza Mir is a cleric serving SABA and its members.  The remaining

6  Plaintiffs are members of Dr. Mir's family.  In January of 2002, Dr. Mir (and presumably the

7  rest of his family) entered the United States.  (Complaint ¶ 2.)  Dr. Mir was granted a R-1

8  non-immigrant religious worker visa.  In 2004, his R-1 visa was renewed until January 1,

9  2007.  (Id.)

10         On April 11, 2005, on behalf of Dr. Mir, SABA filed a I-360 Petition as a "special

11 religious worker."  If granted, the petition would have allowed Dr. Mir and his family to

12 qualify for permanent residence in the United States.  (Complaint ¶ 2.)  On September 8,

13 2006, with the I-360 Petition still pending adjudication, Plaintiffs filed a lawsuit in the

14 Northern District for mandamus and other relief.  The case was assigned to this Court.[2]

15 (Complaint ¶ 3.)  In a joint stipulation, USCIS agreed to adjudicate SAB's petition for Dr.

16 Mir before December 29, 2006.  (Id.)  On January 3, 2007, the parties stipulated to dismissal

17 of civil case 06-55515 JW.  (See Docket Item No. 20 of C-06-5515 JW.)

18         On December 29, 2006, USCIS denied SABA's I-360 Petition.  (Complaint ¶ 4.)

19 SABA immediately appealed the denial to USCIS's Administrative Appeals Office

20 ("AAO").  (Complaint ¶ 5.)  On May 29, 2007, with that appeal of the first I-360 Petition

21 still pending, SABA filed a second I-360 Petition on behalf of Dr. Mir based on a new 2-year

22 qualifying period.  (Id.)  Concurrently with SABA's second I-360 Petition, on May 29, 2007,

23 Dr. Mir, his wife and two older children filed I-485 Applications for adjustment of status and

24 accompanying applications for interim employment authorization, the I-765 Petition.  (Id.)

25

26

27         [2]  (See C-06-5515 JW Shi'a Association of the Bay Area, et al. v. Michael Chertoff, et al.)

28                                                    2

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    On June 6, 2007, both the I-485 Application and the I-360 Petition were rejected

2    under a regulation which does not permit concurrent filing in religious worker petitions.

3    (Complaint ¶ 6.)

4    On June 14, 2007, USCIS denial of the first I-360 Petition was vacated by the AAO

5    and remanded to the district office for determination.  (Complaint ¶ 7.)

6    Dr. Mir's R-1 visa expired on January 1, 2007, without extension.  Since the first I-

7    360 Petition had been initially denied, Dr. Mir and his family began to accrue "unlawful

8    presence" credits as of January 1, 2007.  (Complaint ¶ 8.)  If Dr. Mir accrues 180 days of

9    "unlawful presence," he and his family will be legally barred from applying for adjustment

10   of status and ineligible for re-entry to the United States for 3 to 10 years.  (Id.)  SABA would

11   be barred from continuing to employ Dr. Mir and could suffer additional penalties.

12   (Complaint ¶ 10.)

13   On June 25, 2007, shortly before Dr. Mir's 180th day of "unlawful presence," SABA

14   and the Mir family filed this case against the Secretary of Homeland Security, the United

15   States Attorney General and others.  Plaintiffs seek a declaratory judgment that (1) the April

16   12, 2005, I-360 Application was improperly denied; and (2) it was collaterally improper to

17   deny the I-485 and I-765 Applications, since they would have been proper if the I-360 had

18   been granted.  Plaintiffs ask the Court to compel Defendants to accept the Applications.

19   (Complaint ¶ 51-52.)  In addition, Plaintiffs seek to enjoin Defendants from accruing

20   "unlawful presence" credits during the pendency of this action.  (Id.)

21   On June 25, 2007, Plaintiffs also moved for a temporary restraining order ("TRO")

22   immediately suspending the accrual of "unlawful presence" credits.  (See Docket Item No. 4.)  The

23   Court denied the application for failure to demonstrate irreparable harm.  (See Docket Item No. 7.)

24   On June 27, 2007, Plaintiffs renewed their application for a TRO, citing a  typographical error in

25   their previous application.  (See Docket Item No. 14.)  On June 29, 2007, the Court issued a

26   Temporary Restraining Order to preserve the Court's ability to decide its jurisdiction in this matter.

27

28                                                             3

1  The Court enjoined Defendants from counting the days between June 28, 2007 and July 30, 2007[3] as

2  days in which the Plaintiffs were "unlawfully present" in the United States.  (See Docket Item Nos.

3  18.)

4         Before proceeding to consider whether a Preliminary Injunction is appropriate in this case,

5  the Court must first examine whether it has subject matter jurisdiction over Plaintiffs' claims.

6                                    **III.  STANDARDS**

7         Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a motion to dismiss for

8  lack of subject-matter jurisdiction.  A 12(b)(1) motion may be either facial, where the inquiry is

9  confined to the allegations in the complaint, or factual, where the court is permitted to look beyond

10 the complaint to extrinsic evidence.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  On a

11 facial challenge, all material allegations in the complaint are assumed true, and the question for the

12 court is whether the lack of federal jurisdiction appears from the face of the pleading itself.  See

13 Wolf, 392 F.3d at 362; Thornhill Publishing Co. v. General Telephone Electronics, 594 F.2d 730,

14 733 (9th Cir. 1979).  When a defendant makes a factual challenge "by presenting affidavits or other

15 evidence properly brought before the court, the party opposing the motion must furnish affidavits or

16 other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  Safe Air

17 For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  The court need not presume the

18 truthfulness of the plaintiff's allegations under a factual attack.  White v. Lee, 227 F.3d 1214, 1242

19 (9th Cir. 2000); Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).  However, in the

20 absence of a full-fledged evidentiary hearing, disputes in the facts pertinent to subject matter are

21 viewed in the light most favorable to the opposing party.  Dreier v. United States, 106 F.3d 844, 847

22 (9th Cir. 1996).  The disputed facts related to subject-matter jurisdiction should be treated in the

23 same way as one would adjudicate a motion for summary judgment.  Id.

24

25

26        [3] Though the actual Order enjoined Defendants from counting the days between June 28,
   2007 and July 23, 2007 because that was the original hearing date on the motion, the Court moved
27 the hearing to July 30, 2007 in light of its own unavailability.

28                                          4

**United States District Court**
For the Northern District of California

**IV.  DISCUSSION**

The principal legal issue before the Court is whether the Court has subject matter jurisdiction to hear the Complaint.  To allow the Court to answer this question, at the hearing on the motion, the Court ordered the continuing suspension of "unlawful presence" credits pending its decision.

The Northern District of California has taken subject matter jurisdiction over some immigration related cases under provisions of the Administrative Procedures Act ("APA").  See Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63-65 (2004).  Under the APA, a plaintiff must show that (1) an agency had a nondiscretionary duty to act and (2) the agency unreasonably delayed in acting.  Id.; see also 5 U.S.C. §§ 555(b), 701(a)(2).  Once a plaintiff establishes these elements, the reviewing court must issue an order compelling the withheld or delayed action.  5 U.S.C. § 706(1).

However, both the APA and the Immigration and Nationality Act ("INA") specifically preclude jurisdiction over actions which are in the agency's discretion.  5 U.S.C. § 701(a)(2); 8 U.S.C. § 1252(a)(2)(B)(ii).  USCIS undoubtedly has wide discretion over applications for visas and status adjustments.  The Immigration and Nationality Act ("INA") provides:

> The status of an alien . . . may be adjusted by the Attorney General,[4] in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).

There is a nationwide split of authority among federal district courts whether § 1252(a)(2)(B)(ii) precludes the courts from reviewing delays in adjudicating cases brought under 8 U.S.C. § 1255.  See Fu v. Gonzales, No. 07-0207, 2007 WL 1742376, at *2 (N.D. Cal. May 22, 2007); Safadi v. Howard, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006).  Section 1255 allows the Attorney General, "in his discretion and under such regulations as he may prescribe," to adjust the

_____

[4] Authority to adjudicate adjustment of status applications has since been transferred to the Secretary of Homeland Security and his delegate in USCIS.  See 6 U.S.C. §§ 271(b)(5), 557.

**United States District Court**
For the Northern District of California

5

1   status of alien residents.[5]  28 U.S.C. § 1255.  However, the Ninth Circuit has held that Section 1252

2   is to be narrowly construed and the "jurisdictional bar is not to be expanded beyond its precise

3   language."  Ana Int'l Inc. v. Way, 393 F.3d 886, 891 (9th Cir. 2004).  Accordingly, courts in the

4   Northern District of California have found that the "plain language of 1252(a)(2)(B) addresses only

5   judgments, decisions, or actions committed to the discretion" of the Secretary of Homeland Security,

6   "not inaction or delay."  Toor v. Still, No. 07-0645, 2007 WL 2028407, at *2 (N.D. Cal. July 10,

7   2007) (analogizing to Iddir v. I.N.S., 301 F.3d 492 (7th Cir. 2002).[6]  While the Attorney General

8   may have discretion in the adjustment of immigration status, the duty to adjudicate applications

9   itself is not discretionary.  Id.  Therefore, the USCIS has a statutory duty to adjudicate I-485

10  applications within a reasonable time.  Toor, No. 07-0645, 2007 WL 2028407, at *1-2.[7]

11      At the heart of Plaintiffs' Complaint is a challenge to (1) the denial of the original I-360

12  Petition, which is still pending appeal[8], (2) the USCIS regulations which preclude concurrent

13  applications under the circumstances of this case, and (3) the application of those regulations to

14  Plaintiffs.

15      The Court declines to exercise subject matter jurisdiction to consider any claim by Plaintiffs

16  with respect to the denial of the I-360 Application, because Plaintiffs have not exhausted their

17  administrative remedies.  This case is distinguishable from other Northern District cases.  That is,

18

19      [5]  Although the text of 8 U.S.C. § 1255(a) refers to the Attorney General as the official who
20  may grant adjustment of status, the authority over such adjudications has been transferred to the
    Secretary of Homeland Security and the USCIS. See 6 U.S.C. § 271(b)(5).

21

22      [6]  See e.g., Konchitsky v. Chertoff, No. 07-00294, 2007 WL 2070325, at *3 (N.D. Cal. July
    13, 2007);  Fu, 2007 WL 1742376, at *2; Gelfer, 2007 WL 902382, at *2.

23

24      [7]  See e.g., Singh v. Still, 470 F. Supp. 2d 1064 (N.D. Cal. 2007); Gelfer, 2007 WL 902382;
    Wu v. Chertoff, No. 06-07880, 2007 WL 1223858, at *3 (N.D. Cal. April 25, 2007); Dmitriev v.
25  Chertoff, No. 06-07677, 2007 WL 1319533 (N.D. Cal. May 4, 2007); Baker v. Still, No. 06-7456,
    2007 WL 1393750 (N.D. Cal. May 9, 2007); Razaq v. Poulos, No. 06-2461, 2007 WL 61884, at *4
    (N.D. Cal. Jan. 8, 2007); Quan v. Chertoff, No. 06-7881, 2007 WL 1655601 (N.D. Cal. June 7,
26  2007); Tang v. Chertoff, No. 07-0395, 2007 WL 1650938, at *2-3 (N.D. Cal. June 5, 2007).

27      [8]  The Court is not aware of the status of this second I-360 Petition.

28                                                      6

**United States District Court**
For the Northern District of California

1  the Court cannot determine that the administrative agency is refusing to act, while the original I-360

2  Petition is pending appeal and it is, by all accounts, going through a "process." See Singh, 2007

3  U.S. Dist. LEXIS 16334 at *9 (N.D. Cal. Jan. 8, 2007); see also Yu v. Brown, 36 F. Supp. 2d 922,

4  932 (D.N.M. 1999).

5       The Court finds that it lacks subject matter jurisdiction to consider Plaintiffs' claims

6  pertaining to Defendants' rejection of the second SABA's I-360 Petition, and the Mirs' concurrent I-

7  485 and I-765 Applications.  The rejections were within the discretion of the administrative agency

8  and as such, beyond the subject matter jurisdiction of the Court.  The Court declines to exercise

9  subject matter jurisdiction over SABA's religious discrimination as moot, in light of its finding that

10  it does not have jurisdiction over Plaintiffs' claims.

11       Accordingly, the Court DISMISSES the entire Complaint for lack of subject matter

12  jurisdiction.

13                                **V.  CONCLUSION**

14       This Order does not contradict the Court's finding that it had authority to suspend the accrual

15  of "unlawful presence" credits during the pendency of this action.  In aid of its jurisdiction and in

16  order to permit the Mir family to seek a further stay from the administrative agency or an

17  appropriate court, or to leave the United States in an orderly fashion without suffering a penalty, the

18  Court STAYS entry of Judgment of Dismissal until October 1, 2007.  The Court further enjoins

19  Defendants from accruing "unlawful presence" credits against the Mir family between July 30, 2007

20  and October 1, 2007.  On October 2, 2007, unless otherwise ordered by the Court, Judgment of

21  Dismissal shall be entered by the Clerk of Court and the Clerk shall close the case.

22

23  Dated:  August 24, 2007                           _____

24                                                   JAMES WARE
                                                     United States District Judge

25

26

27

28                                          7

**United States District Court**
For the Northern District of California

1

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2

Ila Casy Deiss ila.deiss@usdoj.gov
Jill Barbara Stanton lawstan@pacbell.net

3

Mary Beth Kaufman marybethkaufman@gmail.com

4

**Dated:  August 24, 2007**                          **Richard W. Wieking, Clerk**

5

6

**By:   /s/ JW Chambers**
                    **Elizabeth Garcia**

7

                    **Courtroom Deputy**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28